769 So.2d 1053 (2000)
Alberto RAMON, Appellant,
v.
The ARIES INSURANCE COMPANY, Appellee.
No. 3D99-2165.
District Court of Appeal of Florida, Third District.
August 2, 2000.
Rehearing Denied November 8, 2000.
John H. Ruiz, Luisa M. Linares and Maloy Castro Morales, Miami, for appellant.
Buckner & Shifrin, Miami; Lauri Waldman Ross, Miami, for appellee.
*1054 Before JORGENSON and SORONDO, JJ., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
Alberto Ramon, on behalf of himself and all others similarly situated, sued Aries Insurance Company arguing the insurer had improperly withheld the deductible after his claim for insurance benefits. After a hearing on the matter, the trial court granted Aries' motion for final summary judgment. We affirm.
The vehicle in which Ramon was riding as a passenger was involved in an accident. The owner of the vehicle at the time of the accident was Irene Lopez, who was insured by Aries. Months after the accident, Ramon married Lopez's daughter Catherine and the couple moved in with Lopez. At the time of the accident, however, Ramon maintained a separate residence from Lopez and was not a relative of the insured. Ramon was injured in the accident and sought medical treatment. Ramon timely notified Aries of the accident and submitted his medical bills to the insurer. Aries paid 80% of the medical bills after it applied a $2000.00 PIP deductible, even though Ramon was not the named insured or a dependent relative residing in the same household of the insured or a pedestrian.
Thereafter, Ramon filed the instant action styled "class representation," claiming that Aries had erroneously applied the insured's deductible to him and that he was the representative of a class of persons similarly situated. Ramon's complaint alleged that Aries violated section 627.739, Florida Statutes (1999), by making payment of medical bills under the provisions of its PIP coverage but applying the deductible to the claim even though the claimant was not the named insured or a dependent relative residing in the same household or a pedestrian.
Upon learning that Ramon was not a dependent resident relative of the insured and within one month of the filing of the complaint, Aries paid the difference (removing the deductible) from the sums paid to all of Ramon's medical providers. Aries also stipulated that Ramon was due his fees and costs for the filing of the individual suit. Aries answered the complaint and raised the affirmative defense of Ramon's lack of standing to maintain the case on behalf of any class. Aries also sought to strike the class action allegations and to stay class discovery pending determination of Ramon's standing to represent any purported class. The trial court deferred ruling on Aries' motion to strike pending a determination of Ramon's standing.
In deposition Ramon conceded that all of his medical providers had been paid in full, with interest, and that he was due no money from the insurer. He also admitted that he knew of no other persons similarly situated to him. Ramon was specifically asked about the underlying facts for the class representation allegations in his complaint and the extent of his investigation of those facts prior to filing suit. Ramon conceded he had done no investigation, he knew nothing about the requirements for a class action suit, and had no idea if even one other person had suffered from the "practice" at issue, i.e. the improper application of a deductible. Ramon said only that he "assumed" it had happened to others. Ramon conceded that he had not read the complaint until just before his deposition, that he had no agreement to pay the costs incurred by the lawsuit, and that his lawyers had advised him he would be compensated financially for his time. When asked why he was proceeding with his suit when his own claim had been rectified he said he was proceeding so that the insurer would "change the way they do things." However, immediately thereafter, he again confirmed that this goal was based on no more than his uninformed assumption.
Aries moved for summary judgment on all class allegations, asserting that: (1) Ramon had no standing to maintain any action on behalf of a class since he himself *1055 had sustained no damages; and (2) the pursuit of a class action without prior investigation gave Ramon a blank check to conduct a fishing expedition to attempt to find other class representatives or members in discovery. At the summary judgment hearing Ramon's counsel conceded that he too had done no investigation prior to filing suit. He maintained simply that he was acting in good faith based on the fact that in his career he had sued insurers many times for the payment of deductibles. The trial court agreed with Aries that Ramon had not met the minimum threshold required to maintain a class action. From the adverse final summary judgment entered on his "class action" allegations, Ramon timely appealed. We affirm.
Presented with an error in the payment of Ramon's medical bills, the insurer immediately corrected its error by prompt payment and a stipulation to pay Ramon's fees and costs. We have previously held such actions to be totally appropriate. The plaintiffs in Taran v. Blue Cross Blue Shield of Florida, Inc., 685 So.2d 1004, 1006 (Fla. 3d DCA 1997), brought a class action against health insurers for charging excessive premiums to insureds. The trial judge in Taran entered summary judgment in favor of insurers based on lack of standing. We held that: (1) the trial court could rule on standing before considering whether to certify class; (2) the trial court could preclude class discovery until it was determined whether plaintiffs had standing; (3) the trial court could grant summary judgment without ruling on a motion to add one plaintiff's spouse as an additional class plaintiff; and (4) the insurers could issue refunds to some insureds without negotiating settlement with plaintiffs' counsel on class basis. We observed:
The insurers discovered that in certain cases there had been billing errors. They issued refunds to the affected customers, one of whom was plaintiff Michalowsky's wife, Joy Seigel. Plaintiffs argue that it was impermissible for the insurers to issue refunds without negotiating a settlement with plaintiffs' counsel on a class basis. We disagree.
In the absence of an order prohibiting it, a class action defendant is allowed to deal with members of the potential class (in this case, its customers) in the ordinary course of business. See 1 Newberg on Class Actions § 15.14. See generally Gulf Oil Co. v. Bernard, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Where a defendant, prior to class certification, recognizes billing errors and desires to correct them, it may do so. The insurers did not seek releases or otherwise interfere with the potential class action, but instead repaid those insureds who had been overcharged.
We see no impropriety.
Taran, 685 So.2d at 1007.
Simply stated:
In the absence of an order prohibiting a common class action, the defendant is allowed to deal with the members of a potential class in the ordinary course of business, provided the defendant did not seek releases from the members of the class or otherwise interfere with the potential class action.
39 Fla. Jur.2d Parties § 56 (1999).
The trial court was correct in concluding that Ramon had no standing to represent any unnamed individual. "[I]f none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class." Taran, 685 So.2d at 1006, citing O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674(1974); see Allstate Indem. Co. v. Domato, 730 So.2d 343 (Fla. 3d DCA 1999)(finding that plaintiff was an improper class representative, as his claim against insurer was atypical of the class he purported to represent). Ramon was not "picked off." The insurer simply acted promptly to correct an error and comply with the PIP statute.
*1056 When the class action was filed Ramon had no information that a class existed. The benefits associated with class action treatment do not come without a price. The matter has been discussed in a Florida Bar Journal article entitled "Class Actions: Fundamentals of Certification Analysis," 10 May Fla. B.J.(1998):
The standards for maintaining a class action must be applied carefully in light of the serious due process concerns raised by certification. By aggregating and magnifying claims, certification "makes it more likely that a defendant will be found liable and results in significantly higher damage awards." Courts have also recognized that "[c]ertification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense." For this reason, "class actions create the opportunity for a kind of legalized blackmail." (Footnotes omitted.)
It is important that the plaintiff in a class suit should allege facts showing the necessity for bringing the action as a class suit, as well as the plaintiffs right to represent the class. The existence of the class should be alleged as well as described with some degree of certainty, and mention should be made that the members are so numerous as to make it impracticable to bring them all before the court. See Fla. R. Civ. P. 1.220 Committee Note. The statement of a gut feeling or impression that something is amiss will not suffice.
The plaintiff delivers a dissertation as to the pernicious practice of "picking off" class action representatives by settling their claims and asks this court to issue guidelines to stop this practice. However the claim that Ramon was "picked off" is simply inapplicable to the instant case and to provide such guidelines based on the facts before us would be of little value. Faced with a litigant with no injury and that litigant's mere conjecture that others may have suffered the harm he no longer can claim, and evidence that the insurer was doing no more than it was legally obligated to do, the trial judge acted totally appropriately in ordering the summary judgment under review. Accordingly, that order is affirmed.