913 So.2d 703 (2005)
NEIGHBORHOOD HEALTH PARTNERSHIP, INC., Appellant,
v.
Kenneth FISCHER, M.D., Appellee.
No. 3D05-175.
District Court of Appeal of Florida, Third District.
October 19, 2005.
*704 Gardner, Carton & Douglas, and Patrick S. Coffey, and Scott J. Fisher, and Peter J. Meyer, Chicago (Illinois); Greenberg Traurig, and Elliot H. Scherker, and Hilarie Bass, and Mark Schnapp, Miami, for appellant.
Kozyak, Tropin & Throckmorton, and Thomas A. Tucker Ronzetti, and Adam M. Moskowitz, Coral Gables, for appellee.
Before GERSTEN, GREEN, and FLETCHER, JJ.
PER CURIAM.
This is an appeal from a non-final order granting class certification in a breach of contract action brought by appellee, Kenneth Fischer, M.D. Dr. Fischer purports to represent a class of Florida physicians for whom payment on certain claims for high intensity and costly procedures has either been denied or systematically reduced by appellant, Neighborhood Health Partnership, Inc. (NHP), pursuant to an alleged "downcoding" practice. On this appeal, NHP asserts, among other things, that the trial court's class certification was an abuse of discretion because Dr. Fischer lacked standing to proceed as class representative. We agree and reverse.
Dr. Fischer filed an amended class action complaint[1] against NHP for breach of contract. In this complaint, he sought to proceed as the representative of a putative class comprised of "[a]ll physicians who contracted with NHP ... and provided medical services in Florida" to any NHP insured from January 2000 until the date of certification "and who submitted any medical `clean claim'[2] to NHP that was automatically downcoded and/or pended without NHP first performing a clinical medical review of the physician's medical records for that procedure by a qualified medical examiner." According to the breach of contract allegations, "[i]nstead of paying these claims as contracted and agreed, NHP either: (i) "automatically changes the code submitted by the physician to a less costly procedure code, without a clinical review of the physician's medical records"; or (ii) "refuses to pay the claim as submitted and instead `pends' the claim requests additional medical materials and th[en] denies the claim as submitted without conducting an appropriate medical review." Dr. Fischer further alleged that "NHP has processed many millions of similar physician coded claims and has engaged in similar downcoding practices on a class wide basis." Class certification was sought because the alleged systemic pending and downcoding of the claims by NHP resulted in relatively small losses (e.g. $120 or $150) to each physician on each submitted claim.
*705 Prior to the hearing on the motion for class certification, Dr. Fischer was deposed by NHP and asked point-blank whether he had calculated or itemized his alleged damages. He testified that he had only generally mentally calculated his damages to be $10,000-$15,000.[3] After this deposition was taken, but before the certification hearing, NHP performed an audit on Dr. Fischer's high-intensity claims and supporting medical records submitted for payment for the time period at issue. Based upon this audit, the auditor averred in an affidavit, among other things, that:
1) Dr. Fischer had regularly filed high intensity evaluation and management claims ("E & M claims") to NHP for payment that were unsupported by the medical records submitted.
2) There was no instance in which NHP reimbursed Dr. Fischer for an amount less than that which was supported by the medical records. For every professional service reviewed, NHP reimbursed Dr. Fischer for amounts equal to or higher than that to which he was entitled based on his medical records. For example, for 62 of 71 professional services and medical records reviewed, the level of E/M service coded and submitted to NHP by Dr. Fischer was unsupported by the medical documentation. Therefore, NHP overpaid Dr. Fischer for the 62 services reviewed.
3) In those instances in which Dr. Fischer was requested to and provided additional medical records to support a claim, NHP made additional payments for a higher level of service.
At the hearing on the motion for class certification, NHP submitted the affidavit in opposition and argued that Dr. Fischer lacked standing to serve as the class representative. Dr. Fischer did not file a counter-affidavit nor was evidence taken at the hearing that controverted the affidavit. Upon the conclusion of the hearing, the trial court granted class certification finding that all of the requirements for class certification pursuant to Rule 1.220, Florida Rules of Civil Procedure, had been met. This appeal then followed.
NHP argues and we agree that the trial court abused its discretion in certifying this class where the uncontroverted evidence is clear that Dr. Fischer lacks standing to serve as a class representative because he has no claim for damages against NHP, and, indeed, may in fact owe a refund to NHP for claims overpaid to him. See Chinchilla v. Star Cas. Ins. Co., 833 So.2d 804 (Fla. 3d DCA 2002)(insured lacked standing to be class representative where insurer had reinstated insured's policy so that coverage existed to pay medical bills as demanded by insured); Graham v. State Farm Fire & Cas. Co., 813 So.2d 273 (Fla. 5th DCA 2002)(insureds lacked standing to proceed as class representatives where insurer paid insureds in full two years prior to the filing of class claims); Ramon v. Aries Ins. Co., 769 So.2d 1053 (Fla. 3d DCA 2000)(insured who had received full payment of personal injury protection (PIP) benefits by insurer who acted promptly to correct error under PIP statute and not to "pick off" plaintiff lacked standing to pursue class action claim); Taran v. Blue Cross Blue Shield of Fla., Inc., 685 So.2d 1004, 1006 (Fla. 3d *706 DCA 1997)("[I]f none of the named plaintiffs purporting to represent a class establishes a requisite of a case or controversy with the defendant, none may seek relief on behalf of himself or any other member of the class") (quoting O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).
Dr. Fischer has no additional claims for monetary damages from NHP, but insists that the issue of his standing to serve as class representative is not dependent upon whether he will ultimately be entitled to reimbursements. He also appears to argue that the trial court was required to certify the class if all of the requisite elements were met without regard to the merits of whether he was entitled to damages from NHP. His arguments in this regard are wrong.
The standing of the class representative is a threshold inquiry that must be addressed and answered in determining commonality and typicality of a class. See The Club at Admiral's Cove, Inc. v. Skigen, 879 So.2d 57, 59 (Fla. 4th DCA 2004). We have held that if it is demonstrated, at the outset, that plaintiffs who have filed a class action complaint have suffered no injury and have no cause of action against the defendants, that the class should not be certified. See Taran; Baptist Hosp. of Miami, Inc. v. Demario, 683 So.2d 641 (Fla. 3d DCA 1996)(reversing class certification order where trial court proceeded to consider class certification without resolving a substantial challenge raised with respect to the class plaintiff's standing).
Thus, in light of all of the foregoing, we conclude that the trial court abused its discretion in certifying this class because the uncontroverted evidence demonstrated at the outset that the class plaintiff, Dr. Fischer, had no claim for damages and therefore no standing to proceed in this case. Accordingly, we reverse the class certification order.
Reversed.
NOTES
[1] The original complaint contained counts for unjust enrichment and injunctive relief. While the certification motion was pending, however, the complaint was amended to allege claims for breach of contract and injunctive relief.
[2] According to the amended complaint, a "clean claim" is defined by NHP as "a fully and accurately completed HEFA 11500 or UB-92 form" (i.e. standard health insurance claim forms), on which physicians are required to identify "a diagnosis code and CPT procedure code for physician services." Current Procedural Terminology (CPT) codes "provide a uniform language that accurately describes medical, surgical, and diagnostic services," ranging from "a `5' for the most complex office visit to a `1' for the most basic visit." In short, a "clean claim" is one that is presented on an approved form with all the required information, including procedural codes.
[3] The transcript reflects the following:

[Q] Dr. Fischer, have you done any calculation or itemization of claims damages?
[A] I did a mental, not pertaining to litigation, but a mental calculation of where I stand, what the general amount is that I've not received and that I think I should have received.
[Q] What is that general calculation?
[A] I would say its around 10-$15,000.