# Third District Court of Appeal

## State of Florida

Opinion filed January 13, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-1323
Lower Tribunal No. 17-8285
_____


**City of Opa-Locka, Florida, etc.,**
Appellant,

vs.

**George Suarez, et al.,**
Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Kozyak Tropin & Throckmorton LLP, and Detra Shaw-Wilder, Dwayne A. Robinson, and Mindy Y. Kubs, for appellant.

Kuehne Davis Law, P.A., and Benedict P. Kuehne and Michael T. Davis; Michael A. Pizzi, Jr., P.A., and Michael A. Pizzi, Jr.; Reiner & Reiner, P.A., and David P. Reiner II, for appellees.


Before FERNANDEZ, HENDON and LOBREE, JJ.

HENDON, J.

The City of Opa-Locka ("City") appeals from a non-final order granting the Plaintiffs' motion for class certification and denying the City's motion to strike class allegations. We affirm in part and reverse in part.

*Facts*

This appeal from a class action certification arises out of the City's decade-long policy and practice of estimating customer water usage and its decision to use customer water deposits to satisfy budget shortfalls during the City's ongoing financial crisis. At issue is whether the trial court properly granted class certification on two counts of the complaint.

The class representatives[1] ("Plaintiffs") are residential and commercial consumers of the City's water services. The Plaintiffs alleged that the City breached its obligation to provide water for a reasonable cost to the Plaintiffs and all other water customers under the terms of the water utility agreement by failing to provide working water meters,[2] overcharging for water use, and unlawfully using customer

[1] George Suarez, Tania Suarez, Roscoe Pendelton, Adel Raad, Charaf Raad, Steven Barrett, Natasha Ervin, Taxes by Natasha Ervin, a Florida Corporation, and Alfonso J. Ervin, III.

[2] The record evidence shows that the City engaged the Avanti Company to conduct a city-wide examination of the state of the City's water meters. The study confirmed that forty-three percent (43%) of the City's water meters were not capable of being read. And that of the fifty-seven percent (57%) that were operational, only thirty-four percent (34%) gave accurate readings. Based on these numbers, it appeared that no more than nineteen percent (19%) of the City's 5,500 water meters were fully operational. Even so, working meters were not properly read for 10 years. At the

2

water deposits to pay for the City's general operational expenses. The Plaintiffs sought specific performance, compensatory damages, customer refunds, and injunctive relief.

The City responded with a motion to dismiss the second amended complaint based on sovereign immunity and arguing that the Plaintiffs failed to properly state a claim for breach of contract or conversion, and that the counts are barred by the statute of limitations. At the conclusion of a three-day hearing, and after reviewing documents and memoranda from both parties, the court determined that the class met the criteria for class certification pursuant to Florida Rule of Civil Procedure 1.220(a).[3] In a lengthy order, the court certified two classes – a water deposit class and an overbilled class – as follows:

---

time of the class certification hearing, the City had yet to fix all the broken water meters, and approximately 800 of the City's water meters remained broken. The City has a plan in place to replenish the $1.6 million of utility customer deposits that were depleted.

[3] Florida Rule of Civil Procedure 1.220 provides:
>    (a) Prerequisites to Class Representation. Before any claim or defense may be maintained on behalf of a class by one party or more suing or being sued as the representative of all the members of a class, the court shall first conclude that **(1)** the members of the class are so numerous that separate joinder of each member is impracticable, **(2)** the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, **(3)** the claim or defense of the representative party is typical of the claim or defense of each member of the class, and **(4)** the representative party can fairly and adequately protect and represent the interests of each member of the class.

3

CLASS I:
All City of Opa-Locka residents and businesses, commencing as of the period of the statutes of limitations, required to place water deposits with the City, who are entitled to have those deposits safeguarded in segregated accounts, who are entitled to the return of those deposits, and who have not received the return of deposits from the City.

CLASS II:
All City of Opa-Locka water utility customers, commencing as of the period of the applicable statutes of limitations, who paid for water utility services in excess of the amounts they were liable to pay as calculated based on reasonable rates and functioning and accurate water meters and readings.

In addition, that order denied the City's motion to strike the class allegations.

The City has appealed.

*Standard of review*

The standard of review of an order granting a motion for class certification is abuse of discretion. Sosa v. Safeway Premium Fin. Co., 73 So. 3d 91, 103 (Fla. 2011); InPhyNet Contracting Servs., Inc. v. Soria, 33 So. 3d 766, 770 (Fla. 4th DCA 2010). However, we review de novo the trial court's determination of whether the putative class representative has standing to represent the members of the class. Baptist Hosp., Inc. v. Baker, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012); United Auto. Ins. Co. v. Diagnostics of S. Fla., Inc., 921 So. 2d 23, 25 (Fla. 3d DCA 2006).

*Discussion*

Before we can reach the class certification issue, we must first determine whether the Plaintiffs have standing to maintain the proposed classes. To satisfy the

requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant. United Auto, 921 So. 2d at 25 (citing Godwin v. State, 593 So. 2d 211 (Fla. 1992)); Montgomery v. Dep't of Health & Rehab. Servs., 468 So. 2d 1014 (Fla. 1st DCA 1985)). If it is shown that the plaintiff who seeks class certification suffered no injury and, thus, has no cause of action against the defendant, the class should not be certified. Id. at 25 (citing Neighborhood Health P'ship, Inc. v. Fischer, 913 So. 2d 703, 706 (Fla. 3d DCA 2005)).

Class I – The Water Deposit Class

The City argues that the water deposit class should not be certified because the evidence establishes that the Plaintiffs have no standing, no cause of action, and have not suffered any injury by the City's use of the water deposits. We agree.

As a condition of using the City's water services, a customer must enter into a contract with the City for water services by executing an application and depositing funds evidenced by a deposit slip, as prescribed by the Opa-Locka City Code.[4] The

---

[4] Sections 21-23, Opa-Locka City Code, provides:

Application for service required; nature of contract.
Service is to be furnished only upon signed application accepted by the department, and the conditions of such application and the resulting contract for service are binding upon the consumer as well as upon the department. Applications are accepted by the department with the understanding that there is no obligation on the part of the department to render service other than that which is then available from its existing

deposit slip agreement is required to commence a customer's water service. It governs the parties' rights and obligations and establishes the limits of the City's waiver of sovereign immunity as to water deposits. The deposit slip reads:

> As a deposit to guarantee the due payment of any and all indebtedness for water service or charges incident to the water department connections, which may be [ ] [sic] become due to the City of Opa Locka, Florida, by the consumer named herein, this deposit is made with the express understanding and agreement that all or any part thereof may be applied by the City of Opa Locka, Florida, at any time in satisfaction of . . . [the] guarantee [;] and that <u>the City of Opa Locka, may use . . . [the] deposit as fully as if the . . . City were the absolute owner thereof.</u>

(Emphasis added). Customers are to receive refunds only when they discontinue service:

> Upon discontinuance of any or all services covered by this deposit, and the presentation of this receipt, together with proper identification, the City of Opa-Locka agrees to refund to the . . . consumer or whoever may be lawfully entitled thereto, that portion of the deposit applying to the service or services discontinued, less any amounts then due to the City of Opa-Locka, Florida.

The language of the deposit slip agreement clearly indicates that the City may use the deposit funds as if the City "were the absolute owner thereof," until a customer discontinues City water services. Only upon the customer's discontinuance of water services is the City obligated to refund the deposit minus any amounts still owed by the customer. None of the Plaintiffs have discontinued their water service, none are

---

equipment. (Code 1955, § 23-10); <u>see also</u> 21-80, Opa-Locka City Code.

yet entitled to receive a return of their deposits, and as a result have not suffered any injury. By the explicit terms of the deposit slip, the City can use deposit funds toward its general budget. The uncontroverted evidence demonstrated that Plaintiffs seeking to represent a water deposit class have suffered no damages and therefore have no standing to proceed in this case. Neighborhood Health, 913 So. 2d at 706 (holding when the class plaintiff lacks individual standing, the proper procedure is to deny class certification and dismiss the complaint). We therefore reverse the determination of class certification of the water deposit class, and do not reach the remaining arguments as to the water deposit class.

Class II – The Overbilled Class

The Plaintiffs seeking to represent the overbilled class have – in contrast to the proposed water deposit class – demonstrated their standing to maintain class certification by showing that a case or controversy exists between the Plaintiffs and the City regarding alleged overbilling for water services. We conclude that the Plaintiffs have demonstrated sufficient interest in the outcome of the litigation to proceed. See Brown v. Firestone, 382 So. 2d 654, 662 (Fla. 1980) (holding a party must "demonstrate a direct and articulable stake in the outcome of a controversy" to open the courthouse doors); Jamlynn Invs. Corp. v. San Marco Residences of Marco Condo. Ass'n, 544 So. 2d 1080, 1082 (Fla. 2d DCA 1989) (holding a party has standing when it has "a sufficient interest at stake in the controversy which will be

7

affected by the outcome of the litigation" ); Whitburn, LLC v. Wells Fargo Bank, N.A., 190 So. 3d 1087 (Fla. 2d DCA 2015); Ferreiro v. Philadelphia Indem. Ins. Co., 928 So. 2d 374, 377 (Fla. 3d DCA 2006) (holding that absent an existing case or controversy between the parties, there would not be standing to pursue a class action claim or represent a class).

The City next challenges the trial court's typicality and commonality finding as to the class of customers overcharged for water. The City argues that it will be logistically and analytically difficult to calculate each individual class member's putative overcharges over the last several years, thus overwhelming the required typicality and commonality elements of class certification. We are unpersuaded by this argument. The focus of a class certification hearing is not on the merits of the claims, or whether the class representatives will prevail at trial, but "whether a litigant's claim is suited for class certification" and whether the proposed class provides "a superior method for the fair and efficient adjudication of the controversy." Sosa, 73 So. 3d at 105–06. The methodology for determining customer overcharges goes to the merits of the class action, and "when considering whether to certify a class, the court's focus is on whether the four requirements have been satisfied, not on the merits of the case." Id. at 105; Broin v. Philip Morris Cos., 641 So. 2d 888, 891 (Fla. 3d DCA 1994) (holding "entitlement to different amounts

8

of damages is not fatal to a class action" (citing <u>Cohen v. Camino Sheridan, Inc.</u>, 466 So. 2d 1212, 1214 (Fla. 4th DCA 1985)).

With that in mind, we turn to the primary concern in the consideration of the commonality element, which is whether the representative's claim arises from the same practice or course of conduct that gave rise to the remaining claims and whether the claims are based on the same legal theory. <u>Sosa</u>, 73 So. 3d at 107. The commonality element only requires that resolution of a class action affect all or a substantial number of the class members, and that the subject of the class action presents a question of common or general interest. <u>Id.</u> The record facts are sufficient to support finding no abuse of discretion in the trial court's commonality determination. Further, "[t]he test for typicality is not demanding and focuses generally on the similarities between the class representative and the putative class members." <u>Sosa</u>, 73 So. 3d at 114. "Mere factual differences between the class representative's claims and the claims of the class members will not defeat typicality." <u>Id.</u>; <u>see also</u> <u>Morgan v. Coats</u>, 33 So. 3d 59, 65 (Fla. 2d DCA 2010) (holding plaintiff met the minimal requirement of showing that he possessed the same interest and had suffered the same type of injury as the rest of the class members. The fact that the extent of . . . injury (i.e., damages) might vary from that of the other class members does not bar a finding of typicality). As this Court explained in <u>Broin</u>, 641 So. 2d at 891–92,

It would be a perversion of the spirit behind rule 1.220, and the cases interpreting the rule, to hold, as defendants urge, that plaintiffs' class action allegations fail because plaintiffs do not present identical claims. If class actions were dependent on class members presenting carbon copy claims, there would be few, if any, instances of class action litigation. It is virtually impossible to design a class whose members have identical claims. Even in the context of a mass disaster, each afflicted member experiences the impact differently, according to the member's relative location and proximity to the event. Defendants' proposed holding would nullify the class action rule, a course of conduct we decline to follow.

"The very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more effective and expeditious, and to make available a remedy that would not otherwise exist." Tenney v. City of Miami Beach, 11 So. 2d 188, 189 (Fla. 1942). Here, as in Tenney, if we were to construe the rule to require each person to file a separate lawsuit, the result would be overwhelming and financially prohibitive. Although defendants would not lack the financial resources to defend each separate lawsuit, the vast majority of class members, in less advantageous financial positions, would be deprived of a remedy. We decline to promote such a result.

We conclude the Plaintiffs seeking to represent the overbilled class carried their burden of pleading and proving the elements required by rule 1.220, and the trial court did not abuse its discretion in certifying the overbilled class pursuant to Florida Rule of Civil Procedure 1.220. The City suggests that this Court should independently assess class certification, but this Court cannot do that, or reach the merits. See Sosa, 73 So. 3d at 118. We accordingly affirm certification of the overbilled class, and reverse certification of the water deposit class.

Affirmed in part, reversed in part.