## HOUK et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12391.

United States Court of Appeals
Fifth Circuit.

April 12, 1949.

Percy W. Phillips, of Washington, D. C., for petitioners.

Helen Goodner, George A. Stinson, Ellis N. Slack, and S. Dee Hanson, Sp. Assts. to Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue and Bernard D. Daniels, Sp. Atty., both of Washington, D. C., for respondent.

Before HUTCHESON, HOLMES and LEE, Circuit Judges.

LEE, Circuit Judge.

Nine separate petitions to review decisions of the Tax Court holding petitioners liable for income tax deficiencies for the year 1941 bring this case before us.[1] Their common gravamen is the application of § 23(k) (1) of the Internal Revenue Code, as amended, 26 U.S.C.A. § 23(k) (1). Particularly, the controlling question is whether the McFaddin Trust is entitled, in computing its net income for the fiscal year ending February 28, 1941, to a deduction of $75,912.34,[2] instead of $16,630.48, allowed by the Tax Court, for a bad debt, recoverable only in part. The petitioners (taxpayers) are beneficiaries or spouses of beneficiaries to whom the Trust income was partially distributable.

The facts are somewhat involved, but those necessary to a decision are not in dispute and may be summarized as follows: On March 1, 1927, W. P. H. McFaddin, hereinafter referred to as the decedent, and his wife, residents of Beaumont, Texas, executed a declaration of trust, wherein they set aside in trust certain real and personal properties having a value in excess of $1,250,000. During the fiscal year ending February 28, 1930, the decedent borrowed from the Trust large sums of money; from 1930 through 1935, he made payments on these obligations; in 1935, the Trust instituted proceedings against him in the State court of Jefferson County, Texas, for a deficiency judgment, and on October 14, 1935, obtained a judgment against him in the sum of $200,085.14, covering principal, interest,[3] and attorneys' fees. The decedent died on November 5, 1935. At that time, the books of the Trust showed that the principal of his unpaid indebtedness was $184,415.70. Of this amount, $75,000 was secured by first liens upon certain properties and was later paid in full; the remaining indebtedness of $109,415.70 was represented by the judgment which the Trust had obtained against him just prior

---

[1] Eight cases involving the same question were consolidated with the Diana McFaddin Houk case for hearing and opinion in the Tax Court, and were likewise consolidated for purposes of the record, briefing, hearing, and decision in this court, all of the eight cases to abide the court's decision herein.

[2] The taxpayers originally claimed deduction in the sum of $115,273.34. This was reduced to $75,912.34 during the hearing before the Tax Court. While claiming the deduction in the amount of $75,-912.34, the taxpayers actually charged off as unrecoverable the sum of $75,-273.34; hence, the amount in controversy is $75,273.34, less $16,630.48 allowed by the Tax Court, that is, the sum of $58,642.86. This amount is made up of judgments and notes operating against the estate of W. P. H. McFaddin, acquired by the McFaddin Trust and is set out in detail in Footnote 4.

[3] This interest was never entered on the books of the Trust.

to his death. The estate tax return filed by his executors in 1936 disclosed gross assets having a value of $247,682.50 and total deductions in the sum of $962,323.58. The widow's community interest valued at $228,471.29 was also available for the payment of decedent's debts; thus, the total value of assets from which debts might be paid was $476,153.79. On February 28, 1941, the value of the property remaining in the decedent's estate was $93,083.26. During the years following decedent's death, but prior to February 28, 1941, at a net cost of $58,642.86,[4] the Trust acquired notes given by and judgments obtained against W. P. H. McFaddin or his estate that operated as liens on estate property.

In addition, on February 28, 1941, there were liens outstanding against the estate property in the sum of $29,554.09. On that date the Trust owed the estate $27,156.05, representing salary due the decedent in the sum of $26,000, and $1,156.05 on open account; and there was still unpaid and due the Trust on the original indebtedness the sum of $109,415.70. The liens outstanding in the sum of $29,554.09 were not taken over by the Trust, and it was not until December 30, 1942, that the Trust took over the remaining assets of the estate, valued at $93,083.26.

The petitioners contend that at the close of the fiscal year ending February 28, 1941, the uncollectible indebtedness due by the McFaddin estate to the Trust, and as such deductible as a bad debt, was $75,273.34.[5] The Tax Court held, however, that the notes and judgments of the estate purchased by the Trust in the amount of $58,642.86 might not be deducted, and limited the deduction to $16,630.48 ($75,273.34 less $58,642.86). The Tax Court based its conclusion on the theory that the Trust had "assumed and paid" the notes and judgments and that such action was purely voluntary. The question to be decided, therefore, is whether the Tax Court properly held the acquisition of these notes and judgments to be voluntary assumption rather than purchase. If the acquisition

---

[4] The items acquired by the Trust were as follows:

| | | |
|---|---|---|
| Judgment, Broussard Trust, acquired at a cost of | $10,500.00 | |
| Judgment, Texas National Bank, acquired at a cost of | 35,725.14 | |
| Judgment, Texas National Bank, acquired at a cost of | 497.64 | |
| Judgment, First National Bank, Houston, acquired at a cost of | 3,629.59 | |
| Secured note, Security State Bank, acquired at a cost of | 2,500.00 | |
| Secured note, Management Co. of Texas, acquired at a cost of | 7,210.00 | |
| Total | | $60,062.37 |
| Less following credits: | | |
| One in the sum of | $ 639.00 | |
| One in the sum of | 780.51 | 1,419.51 |
| Net Amount Paid | | $58,642.86 |

[5] The computation is based upon the following figures:

| | | |
|---|---|---|
| Balance of original indebtedness of W. P. H. McFaddin to the trustees | | $109,415.70 |
| Credits: | | |
| Payment after death | $ 2,100.00 | |
| Amounts due from Trust to decedent for salary and on open account | 27,156.05 | 29,256.05 |
| Balance of original indebtedness | | $80,159.65 |
| Possible recovery at February 28, 1941, from assets of decedent's estate: | | |
| Value of assets of estate | $93,083.26 | |
| Liens thereon: | | |
| Other than those acquired by McFaddin Trust | $29,554.09 | |
| Acquired by McFaddin Trust | 58,642.86 | 88,196.95 |
| Available for application to original indebtedness | | 4,886.31 |
| Charged off as unrecoverable | | $75,273.34 |

was a voluntary assumption without consideration, there is no basis for the Trust to include any part of the obligation represented by the notes and judgments in computing its bad-debt deduction. On the other hand, if the Trust purchased existing obligations against the estate in crder to protect Trust property or an obligation due the Trust, it stands as assignee and may offset the price paid against the benefit realized, in determining the bad-debt deduction on the obligation due it to the extent such obligation is unrecoverable.[6]

The Government urges that absence of a debtor-creditor relationship, with the consequent absence of existing indebtedness, precludes treatment of the acquisition as anything but voluntary assumption of the estate's debts. In its opinion, the Tax Court said: "* * * Whatever the objective in assuming these liabilities of the Estate, the action of the trustees in so doing was purely voluntary and without any legal obligation whatsoever. Such voluntary assumption of debts of the Estate could not result in increasing the indebtedness owed by the Estate to the Trust and petitioners erred in treating the liabilities assumed as part of this indebtedness."

With these views we are unable to agree. As a matter of conservation of the estate of the decedent, in order to reap from it as large a part of the indebtedness due by it to the Trust as possible, as well as for protection of liens and properties owned by the Trust and subject to some of the estate obligations, it was necessary that the Trust acquire the notes and judgments in question. The acquisition was, of course, voluntary in that no legal duty rested upon the trustees to pay obligations of the decedent. Conversely, however, failure to take the affirmative steps of acquisition would have constituted indifference to, if not positive neglect of, the duty which did rest upon the trustees to save and protect the trust corpus, including debts due it, for the beneficiaries. As we see it, the trustees voluntarily, i. e., willingly and deliberately, pursued a course of action made mandatory by what they considered sound business judgment.

The primary fault displayed in the Commissioner's argument lies in the premise that the judgments and notes making up the $58,642.86 were voluntarily "assumed" by the Trust. The record not only does not substantiate such a proposition, but it shows the contrary to have been true: Three of the judgments were transferred to the Trust by instruments of conveyance, the words of which connote, not assumption, but assignments and sales in accordance with Texas law.[7] The judgment from the Broussard Trust was conveyed by instrument which stated that for a consideration the Trust "assigned, transferred and set over" the judgment to the McFaddin Trust.[8] The transfer of the judgment from the Texas National Bank to the McFaddin Trust was effected by an instrument which stated that for a consideration the bank "Granted, Sold, and Conveyed" the judgment.[9] Another instrument conveying a judgment from this bank read, "Granted, Transferred. and Conveyed."[10] The Trust also acquired from the First National Bank, Houston, a judgment which constituted a prior lien on certain estate property, given as security for a note of the decedent on

---

[6] In arriving at the part of the Trust debt against the estate unrecoverable on February 28, 1941, the trustees have deducted the equity between value of assets of estate on hand on that date, $93,083.26, and liens acquired by the Trust and those liens outstanding bearing against those assets, in the total sum of $88,196.95, in other words, an equity of $4,886.31, thus reducing the obligation due the Trust to $75,273.34.

[7] Vernon's Texas Civil Statutes, arts. 570 and 6636.

[8] On August 3, 1940, the Trust, at a cost of $10,500, acquired the judgment against decedent's estate, held by the Broussard Trust, in the face amount of $46,473.00. The Tax Court found that this judgment held by the Broussard Trust was a lien on all of the properties of the decedent's estate.

[9] The Trust acquired this judgment at a cost of $35,725.14. The lien of this judgment operated against certain properties owned by the Trust acquired from the decedent under foreclosure of a deed of trust in 1935. This lien also operated against the estate properties.

[10] The Trust paid $497.64 for this judgment, which was a lien against all unencumbered property owned by the estate at the time of the purchase in August 1936.

which the judgment was based. Part of this property had, prior to the time of the judgment, been acquired by the Trust from the decedent, with a general warranty of title. While the record contains no assignment of this judgment, the parole evidence shows that all the judgments were purchased by the Trust. In the absence of a contrary showing, we may not assume that this judgment was merely paid off. However, even if that was the case, payment was made in order to preserve title to Trust property acquired from the decedent, and, because of the warranty of title, the Trust would have a claim against the estate that the estate could not pay.

By instrument dated December 23, 1940, the Security State Bank & Trust Co. of Beaumont transferred its vendor's lien on property acquired from the decedent by the Trust. The words of the transfer read: "* * * does hereby remise, release, and forever quitclaim unto the * * * trustees * * * the said vendor's lien." This instrument was a release: It relieved the Trust owning the property of the prior lien against that property, and, as to the sum paid ($2,500), it could not be properly considered as the purchase of evidence of debt. The Trust acquired the property by foreclosure sale in June 1935, after its inclusion in a deed of trust by decedent in favor of the Trust. The deed of trust contained warranty of title and authorized the trustees, in the event of default, to give a deed with warranty of title. Thus, in order to clear its title to the property, the Trust was forced to pay off a vendor's lien. Since the decedent had given a warranty of title, the Trust would have a claim in the amount it was required to expend to protect its title.

The note purchased by the Trust from the Management Company for $7,210 was secured by a first lien on property which was acquired by the Trust in closing out the McFaddin estate. This property was appraised at an amount in excess of the price paid by the Trust for the note; hence, by this transaction the Trust was able to salvage the equity in the property over and above the lien held against it.

It is not disputed that McFaddin or his estate was indebted to the original holders of the judgments and notes. By purchasing and receiving assignments of them, the Trust became a creditor of McFaddin or his estate, at least in the amount paid by the Trust for them, and, as an assignee, the Trust stands in the same position as its assignor had stood. Lount v. Mosher, 10 Cir., 115 F.2d 903, certiorari denied 313 U. S. 581, 61 S.Ct. 1097, 85 L.Ed. 1537; and Westgate v. Maryland Casualty Co., 6 Cir., 147 F.2d 177. The purchase by the Trust of the judgments and notes did not extinguish them as debts due by McFaddin's estate but merely transferred them to the Trust, which thereupon had the same rights against the estate as the original holders. Outstanding liens purchased in salvaging equities must be considered in determining the possible loss to the Trust, whether the liens purchased are offset against the full value of estate property or the equity between the liens and the value of the estate property is used to reduce the original indebtedness to the Trust.

That the Commissioner of Internal Revenue has, under § 23(k) (1) of the Internal Revenue Code, as amended,[11] discretion to determine what debts have become worthless or recoverable only in part is not disputed: but he may not treat as voluntarily "assumed and paid" obligations that have been purchased and assigned in order to protect equities that may be used and applied against an existing indebtedness. We are of the opinion, therefore, that the Tax Court erred in not permitting the Trust to deduct from the amount owed it by the estate of McFaddin the sum of

---

[11] "SEC. 23. Deductions from gross income.
"In computing net income there shall be allowed as deductions:
* * * * * *
"(k) Bad debts.
"(1) [as amended by Sec. 113 (a) of the Revenue Act of 1943, c. 63, 58 Stat. 21] General Rule. Debts which become worthless within the taxable year; or (in the discretion of the Commissioner) a reasonable addition to a reserve for bad debts; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction. * * * "

$75,273.34, as a partially worthless debt in 1941.

The decisions of the Tax Court are set aside, and the causes are remanded to that court for a new computation, not inconsistent with the views herein expressed.

Remanded.