[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15606
_____

D.C. Docket No. 0:16-cv-62610-BB


A&M GERBER CHIROPRACTIC LLC,
as assignee of Conor Carruthers, on behalf
of itself and all others similarly situated,

                                        Plaintiff - Appellee,

versus

GEICO GENERAL INSURANCE COMPANY,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 30, 2019)

**ON PETITION FOR REHEARING**

Before WILSON and BRANCH, Circuit Judges, and VINSON,* District Judge.

VINSON, District Judge:

Upon consideration, we grant the Appellee's petition for panel rehearing. We vacate our prior opinion in this case, issued on April 19, 2019, and published at 921 F.3d 1273 (11th Cir. 2019), and hereby substitute the following opinion in its place.

Conor Carruthers was involved in a car accident on March 18, 2015, after which he sought medical services from A&M Gerber Chiropractic LLC. At the time, Carruthers was covered under an automobile insurance policy issued by GEICO General Insurance Company. Pursuant to Florida's Motor Vehicle No-Fault Law, the policy provided him with $10,000 in personal injury protection (PIP) benefits. *See* Fla. Stat. § 627.736(1) (mandating that automobile insurers provide PIP benefits "to a limit of $10,000"). To be entitled to the full $10,000, however, the statute required that Carruthers—like all PIP beneficiaries—be diagnosed by an authorized health care provider with an "emergency medical condition" (EMC); without such a diagnosis, he was limited to $2,500 in benefits. *See id.* at § 627.736(1)(a)(3)-(4); *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 587-88 (11th Cir. 2015) (holding in consolidated appeal that "[b]ecause

---

* Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

2

neither Robbins' nor Enivert's claim was supported by [an EMC determination], neither Garrison nor Progressive violated Fla. Stat. § 627.736 by limiting benefits to $2,500"); *accord, e.g., Progressive Am. Ins. Co. v. Eduardo J. Garrido D.C., P.A.*, 211 So.3d 1086, 1093 (Fla. 3d DCA 2017); *Medical Ctr. of Palm Beaches v. USAA Cas. Ins. Co.*, 202 So.3d 88, 92-93 (Fla. 4th DCA 2016); *McCarty v. Myers*, 125 So.3d 333, 335 (Fla. 1st DCA 2013).

It is undisputed that Carruthers was not diagnosed with an EMC at the time this case was filed. It is also undisputed that, despite the lack of an EMC finding, GEICO paid Carruthers/Gerber $7,311 in PIP benefits pre-suit, well in excess of the $2,500 cap. Even though Carruthers received almost triple the amount in PIP benefits that he was entitled to, Gerber believed that GEICO had misinterpreted certain language in its automobile policies and that this misinterpretation resulted in GEICO consistently underpaying PIP benefits as a "general business practice."

Specifically, the policy contains an endorsement identified as FLPIP (01-13), and that endorsement (under the heading "PAYMENTS WE WILL MAKE") references fee schedules pursuant to which GEICO will pay 80% of benefits that are medically necessary. The endorsement goes on to state: "For all other medical services, supplies, and care [GEICO will pay] 200 percent of the allowable amount under [a Medicare Part B fee schedule]," subject to a limitation of 80% of the "maximum reimbursable allowance under workers' compensation . . . ." Below

3

that statement, GEICO added the following: "A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted." The underlying dispute in this case hinges on whether this single sentence is the operative language of the policy for health care provider bills of less than 200% of the fee schedule.

GEICO has taken the position that the policy is an "80/20 policy" pursuant to which it was required to pay the lower of 80% of the fee schedule amount or 80% of the charged amount, while insureds are required to pay the remaining 20% as co-insurance. To supports its position, GEICO relied, *inter alia*, on a document mailed or provided to its PIP policyholders effective on or after January 1, 2013, and identified as M608 (01-13). This document was titled

<u>IMPORTANT NOTICE</u>

FEE SCHEDULE ENDORSEMENT

and it provides in relevant part that "in no event will the Company pay more than 80 percent" of properly billed medical expenses. GEICO asserts that M608 (01-13) is an endorsement and, thus, part of the policy. Gerber has argued that M608 (01-13) is not an endorsement/part of the policy, and it further argues that FLPIP (01-13) provides that when a health care provider bills for services at an amount less than 200% of the fee schedule, GEICO must pay the charge *as billed* (that is, "in the amount of the charge submitted") without the 20% reduction.

4

Carruthers assigned his rights to his treating chiropractic clinic, Gerber, which later filed a declaratory judgment class action suit in Florida state court in September 2016. The complaint sought certification of a class (with Gerber as the class representative) along with a declaration (a) that GEICO's interpretation of its policy language was wrong, and (b) that the misinterpretation "constitutes a breach of the insurance Policy." Although the complaint sought a declaration that GEICO had breached the policy, the complaint stated that "there is no claim for monetary relief" in the case.

GEICO removed the case to the United States District Court for the Southern District of Florida in November 2016, pursuant to the Class Action Fairness Act, and Gerber filed an unsuccessful motion to remand the case for lack of Article III standing. The District Court appointed Gerber as class representative, and it certified the class to include:

> All health care providers that received an assignment of benefits from a claimant and thereafter, pursuant to that assignment, submitted claims for no-fault benefits under GEICO PIP policies to which Endorsement FLPIP (01–13) applies, and any subsequent policies with substantially similar language that were in effect since January 1, 2013, where GEICO utilized the Code BA [billed amount] with respect to the payment of any claims.

Shortly after the action was removed to federal court, and while its motion to remand was pending, Gerber filed an amended complaint. The amended complaint

was largely the same as the original complaint, but it added another sentence to re-emphasize that "this action does not assert a claim for any monetary relief," and it deleted the request for a declaration that GEICO's misinterpretation of the disputed policy language "constitutes a breach of the insurance Policy."  Thus, as amended, the complaint clarified that it only sought declaratory relief and that there was no claim for breach of contract or request for money damages related thereto.  In July 2017—more than two years after the underlying car accident, and ten months after the litigation was filed—Carruthers obtained an EMC medical diagnosis.

On cross motions for summary judgment, GEICO argued, *inter alia*, that Gerber lacked standing at the outset of the lawsuit because it was undisputed that GEICO had paid Gerber more than $2,500 before the case was filed, even though he had not been diagnosed with an EMC at that time.  By order dated November 17, 2017, the District Court disagreed with GEICO and found there was standing. It also ruled that M608 (01-13) was not an endorsement (but rather was merely a notice) and, thus, it was not part of the policy.  Applying a textual interpretation of the FLPIP (01-13) endorsement, the District Court granted summary judgment for Gerber and held that, "under the disputed provision, when a health care provider bills for covered services in an amount less than 200% of the fee schedule, GEICO is required to pay the charge as billed without any reduction."

6

GEICO now appeals, arguing that Gerber lacked standing to bring this case. It further argues that the District Court erred in certifying the class; in limiting the documents that comprise the policy (that is, in failing to treat M608 (01-13) as an endorsement); and in ruling for Gerber on the merits as to the policy interpretation question.

## I.

We must begin with the question of standing. *See Kondrat'yev v. City of Pensacola, Fla.,* 903 F.3d 1169, 1172 (11th Cir. 2018). If there is no standing, we must end there, too. *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Simply put, once a federal court determines that [the plaintiff has no standing], the court is powerless to continue.").

We review standing determinations *de novo*. *See, e.g., SEC v. Quest Energy Mgmt. Group, Inc.*, 768 F.3d 1106, 1108 (11th Cir. 2014) (citing *CAMP Legal Def. Fund, Inc. v. City of Atlanta,* 451 F.3d 1257, 1268 (11th Cir. 2006)). After *de novo* review—and with the benefit of oral argument—we conclude that Gerber lacks standing.

## II.

Article III of the Constitution limits federal courts to adjudicating actual "cases" and "controversies." *See, e.g., Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components,*

*Inc.*, 572 U.S. 118 (2014).  The case-or-controversy requirement sets fundamental limits on federal judicial power.  *Id.*  "Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing." *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2001).  Standing cannot be waived or conceded by the parties, and it may be raised (even by the court *sua sponte*) at any stage of the case.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986); *Harris v. Evans*, 20 F.3d 1118, 1121 n.4 (11th Cir. 1994).

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1264 (11th Cir. 2015) (same).  "The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.,* 68 F.3d 409, 414 (11th Cir. 1995).

Echoing the "case or controversy" requirement of Article III, the Declaratory Judgment Act "provides that a declaratory judgment may only be issued in the case of an actual controversy."  *See Emory v. Peeler*, 756 F.2d 1547, 1551-52 (11th Cir.

1985) (citing 28 U.S.C. § 2201); *see also Atlanta Gas Light,* 68 F.3d at 414 ("In all cases arising under the Declaratory Judgment Act, . . . the threshold question is whether a justiciable controversy exists."). "That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests." *Emory,* 756 F.2d at 1552. The controversy between the parties cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." *Id.* In order to demonstrate that there is a case or controversy that satisfies Article III's standing requirement when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a "substantial likelihood that he will suffer injury in the future." *Malowney v. Federal Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999); *accord Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) ("Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, . . . the injury-in-fact requirement insists that a plaintiff 'allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future.'") (quoting *Malowney*, 193 F.3d at 1346). "Thus, in order for this Court to have jurisdiction to issue a declaratory judgment, . . . [the plaintiffs] must assert a reasonable expectation that the injury they have suffered will continue or will be repeated in the future." *Malowney*, 193 F.3d at 1347; *see also id.* at 1348 ("Injury

9

in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.").  Accordingly, if a plaintiff does not assert a reasonable expectation of future injury, he "lack[s] standing to bring an action for declaratory relief[.]"  *See id.* at 1348.

In this case, Gerber, as assignee, stands in Carruthers' shoes.  *Houk v. C.I.R.,* 173 F.2d 821, 825 (5th Cir. 1949) ("[A]n assignee . . . stands in the same position as its assignor had stood.").[1]  It necessarily follows, then, that if Carruthers had no standing to file this case against GEICO, Gerber has no standing either. *Crossman v. Fontainebleau Hotel Corp.*, 273 F.2d 720, 725 (5th Cir. 1959) ("An assignee has no greater rights than his assignor[.]").

It is well-settled that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (class representative must have individual standing to raise class claims); *Wooden*, 247 F.3d at 1288 (claim cannot be asserted for a class "'unless at least one named plaintiff has suffered the injury that gives rise to that claim'") (quoting *Prado-Steiman*, 221 F.3d at 1280).  As we have said:

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions rendered prior to the close of business on September 30, 1981.

Under elementary principles of standing, a plaintiff must allege and show that he personally suffered injury. If he cannot show personal injury, then no article III case or controversy exists, and a federal court is powerless to hear his grievance. This individual injury requirement is not met by alleging that injury has been suffered by other, unidentified members of the class to which the plaintiff belongs and which he purports to represent. Thus, a plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue. A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone—not for himself, and not for any other member of the class.

*Griffin v. Dugger*, 823 F.2d 1476, 1482-83 (11th Cir. 1987) (multiple citations, quotation marks, and brackets omitted).

Importantly, Article III standing must be determined as of the time that the plaintiff's complaint is filed. *See, e.g., Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014); *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) (collecting multiple cases); *Atlanta Gas Light*, 68 F.3d at 414 (in determining whether there is an Article III case or controversy, "we 'look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time'") (citation omitted); *accord Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 616 (6th Cir. 2008) (stating that standing must be evaluated "at the time the plaintiff filed his or her complaint

11

and not at anytime thereafter") (citation omitted).  Florida's standing requirement is the same in this respect.  *See Progressive Exp. Ins. Co. v. McGrath Community Chiropractic*, 913 So.2d 1281, 1284-85 (Fla. 2d DCA 2005) (citing and discussing cases and noting that "[a]s these cases demonstrate, the plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed").

### III.

GEICO argues on appeal, as it did below, that Carruthers was only entitled to $2,500 in PIP benefits under the policy because there was no EMC diagnosis at the time the complaint was filed.  Consequently, Gerber (as Carruthers' assignee) was not entitled to benefits beyond $2,500.  Because GEICO paid much more than that amount, Carruthers/Gerber didn't suffer harm as a result of GEICO's alleged misapplication of its policy.  According to GEICO, no matter how we interpret the disputed policy language, Gerber will not be able to recover anything from GEICO (*i.e.*, there was no injury to Carruthers resulting from GEICO's conduct that can be fairly traced to the challenged action and redressed by a favorable court ruling), thereby eliminating the existence of a case or controversy.  GEICO is correct.

When an insurance company has "paid all benefits in full . . . [t]here is no case or controversy[.]"  *Harrison v. United Mine Workers of Am. 1974 Ben. Plan*

12

*& Trust*, 941 F.2d 1190, 1193 (11th Cir. 1991); [2] *accord Progressive Am. Ins. Co. v. Stand-Up MRI of Orlando*, 990 So.2d 3, 4 (Fla. 5th DCA 2008) ("a PIP insurer is not liable for benefits once benefits have been exhausted"); *Neighborhood Health P'ship Inc. v. Fischer*, 913 So.2d 703, 705 (Fla. 3d DCA 2005) (trial court abused its discretion in certifying a class action "where the uncontroverted evidence is clear that Dr. Fischer lacks standing to serve as a class representative because he has no claim for damages against NHP, and, indeed, may in fact owe a refund to NHP for claims overpaid to him"); *Graham v. State Farm Fire & Cas. Co.*, 813 So.2d 273, 274 (Fla. 5th DCA 2002) ("The conceded facts show that the Grahams were paid in full two years prior to the filing of the class claims. . . . Based on the conceded facts, there is no existing dispute between the Grahams and State Farm that would give the Grahams standing to proceed on behalf of other potential plaintiffs with similar disputes."); *Ramon v. Aries Ins. Co.*, 769 So.2d 1053 (Fla.

---

[2] We recognize that there was "no case or controversy" in *Harrison* because the case was rendered moot after the insurer paid benefits in full while the case was pending, unlike this case where the benefits were paid in full pre-suit. But that is a distinction without a difference. As Professor Monaghan has observed, the justiciability doctrines of standing and mootness "share the same root." Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973). The Supreme Court has described mootness as merely "'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Monaghan, *supra*). If a case becomes non-justiciable because an insurer has paid full benefits while the case is pending (as in *Harrison*), the case should be non-justiciable if it is undisputed that the benefits were paid before the case was even filed (as here). To hold otherwise would mean that if GEICO had denied PIP benefits pre-suit but then paid Gerber $7,311 shortly after the case was filed, the case would have become moot and thus non-justiciable, but undisputed evidence showing that those same benefits were paid before the case was filed wouldn't raise any justiciability concerns.

3d DCA 2000) (policyholder who received full payment of PIP benefits lacked standing to pursue class action claim).

In finding that Gerber had standing in the order under review, the District Court relied on a single case: *Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008). Based on that case, the District Court held that GEICO's pre-suit (and pre-EMC) payment in excess of the statutory cap didn't implicate standing, but, rather, it was an exhaustion of benefits affirmative defense. The District Court's reliance on *Mills* was misplaced.

The plaintiffs in that case, Dale and Diane Mills, owned a mobile home that was insured under a policy issued by the defendant, Foremost Insurance Company. They filed a class action alleging that Foremost had failed to pay them (and other insureds) for overhead, profit, and taxes after they sustained hurricane-damaged losses, and they sought compensation for those "Withheld Payments." Notably— and in contrast to this action—the plaintiffs in *Mills* were seeking both declaratory relief *and* damages for breach of contract. The defendant argued that the plaintiffs had failed to satisfy certain preconditions in the policy that allegedly required them to complete repair or replacement of their damaged property first and then submit a repair or replacement cost claim to the insurance company before entitling them to the Withheld Payments. Foremost argued that the Millses' failure to do so deprived them of standing, and the District Court agreed.

14

In reversing, we began by holding the District Court erred in interpreting the policy to require that the Millses jump through the aforementioned hoops. *See* 511 F.3d at 1304-06 (rejecting the district court's conclusion that preconditions in the policy required the Millses to complete repair or replacement of their damaged property and to submit such a replacement cost claim to be entitled to the Withheld Payments). We then continued:

> The district court also erred in treating these particular insurance coverage issues under the Policy as standing issues. The complaint alleges that the Millses had a mobile home, that Foremost issued an insurance policy covering hurricane damage to the mobile home, that a hurricane damaged the Millses' mobile home, that the Millses made a claim under the Policy for those damages, *and that Foremost paid less on the claim than the Millses contend they are owed. Thus, the Millses clearly had standing to sue for damages under the Policy. See Wooden v. Bd. of Regents*, 247 F.3d 1262, 1273-74 (11th Cir. 2001) (stating that standing is essentially a determination of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," and requires that a plaintiff have suffered a concrete, particularized injury that is caused by the challenged action of the defendant and can be redressed by a favorable court decision).
>
> Whether the Withheld Payments were covered by the Policy is an issue of whether the Millses' complaint fails to state a claim for relief under the Policy—not a standing issue. Whether the Millses' complaint pled sufficient facts is likewise a failure-to-state-a-claim issue. We thus reject Foremost's standing arguments as to the Millses' individual claims against Foremost on this basis as well.

15

*Id.* at 1306-07 (emphasis added).

Therefore, *Mills* was not (as here) an exhaustion of benefits case. Rather, it was a coverage dispute that included a breach of contract claim seeking damages arising out of that dispute. This distinction is critical because if the plaintiffs had prevailed in *Mills,* they would have been entitled to the Withheld Payments. Thus, we found there that "the Millses clearly had standing to sue *for damages* under the Policy" because the plaintiffs alleged that the insurer "paid [them] less on the claim than [they] contend they are owed," and a ruling in their favor on that point would entitle them to the money owed. 511 F.3d at 1307 (emphasis added). By contrast, when insurance benefits are fully exhausted (as here, and as in certain of the cases cited *supra*), there is no case or controversy because no money is owed regardless of how the case is ultimately decided. *See, e.g., Harrison*, 941 F.2d at 1193. *Mills* would apply if Gerber alleged breach of contract and sought damages. But, it specifically tailored its complaint to *avoid* such allegations. [3]

---

[3] In her concurring opinion, Judge Branch believes it is irrelevant that GEICO paid in excess of the PIP limit because Gerber is not seeking money damages. While it is true—as we have noted several times—that Gerber is not seeking money damages for unpaid benefits *in this case*, Gerber has made clear in its brief, in its notice of supplemental authority, and during oral argument that the declaratory relief it seeks is merely a precursor to a claim for money damages *in subsequent cases. See* Appellee Brief at 45 ("declaratory relief may serve 'as a predicate for later monetary relief'") (quoting *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012)); Notice of Supplemental Authority, dated December 5, 2018 (noting "'a declaratory judgment is normally a prelude to a request for other relief'") (quoting *Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003)); Oral Argument 18:40-18:56 ("The declaratory relief, as we say in the cases cited in the supplemental authority [*Berger*] and in the *Gooch* case from the Sixth Circuit that I want to focus on, all make it clear

This is not to say, of course, that to have standing to pursue a declaratory judgment action the complaint must seek monetary relief. It doesn't have to seek such relief. As earlier noted, however, when a plaintiff is seeking declaratory relief without a claim for money damages for injuries already suffered, the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer injury in the future. *E.g., Strickland*, 772 F.3d at 883. Gerber has not alleged such facts here. Quite to the contrary, a review of Gerber's motion to remand indicates that it specifically tailored its complaint to *avoid* alleging future injury (as it did with the money damages). Indeed, Gerber unequivocally stated in its motion that "*Plaintiff does not make any claim in the complaint that there is a risk of future injury.*" *See* Remand Mot. at 9 (emphasis added).[4]

_____

that there's nothing unusual about having declaratory relief as a precursor to monetary relief"). Consistent with the foregoing, counsel for Gerber expressly said at oral argument that if their interpretation of GEICO's policy is correct and Gerber prevails in this lawsuit, the "monetary claims . . . will come" later. Oral Argument 20:30-20:35. We understand this argument (that there are viable claims for damages that will be raised in the future) to potentially implicate the standing issue. If Gerber were to win on the merits, monetary claims may indeed come later (and there may be standing) for class members who were underpaid as the result of GEICO's misinterpretation of its policy language. However, it is undisputed that when the complaint was filed (the only time that matters) Carruthers (the only person who matters) was paid more in PIP benefits than he was entitled to. *See, e.g.,* Appellee Brief at 29 (acknowledging that GEICO "voluntarily pa[id] Gerber $7,311 with no EMC determination when Gerber made its insurance claims"). Thus, there is no monetary claim for Gerber as Carruthers' assignee, and there will be no such claim in the future for Carruthers—even though he was diagnosed with an EMC *after* this case was filed—because standing must be determined as of the time of filing. That is why the exhaustion of benefits issue is relevant and why we have discussed it, even though money damages are not being sought in this litigation.

[4] Ironically, it appears that Gerber didn't allege future injury because it knew that doing so would implicate federal jurisdiction, and it wanted to avoid federal court and stay in Florida state court. *See* Remand Mot. at 7-9 (arguing that federal courts lack Article III jurisdiction over

Gerber now argues—directly contrary to what it previously argued—that there *is* a risk of future injury here. Specifically, Gerber argues that the dispute about the policy language will continue or be repeated in the future, and it will injure Gerber and other chiropractors insofar as they don't know whether to tell their patients that GEICO is responsible for the full 100% of the relevant charges, or whether the patients are responsible for 20%. *See* Oral Argument 19:16-20:23. This is significant, Gerber's counsel noted during oral argument, as evidenced by the fact that GEICO had indirectly accused Gerber of insurance fraud in this case for not attempting to collect the 20% from Carruthers, and such accusations could adversely impact its license in the future. *See id.* at 19:10-20:13.[5]

Whether and to what extent Gerber might be injured is beside the point because the proper inquiry in this case must focus on the potential future injury to *Carruthers*, not to Gerber or other members of the class. *Cf. Kostelac v. Allianz Global Corp. & Specialty AG*, 517 F. App'x 670, 675-76 (11th Cir. 2013) (stating that because an assignee must stand in the shoes of the assignor, and he has no rights greater than the assignor, "the relevant inquiry" must focus on the assignor,

---

declaratory judgment actions if there is no claim for money damages or future injury—neither of which, Gerber argued, was present in this case—but "the Florida Declaratory Judgment Act is much more expansive and permits a claim similar to this action").

[5] Gerber also points out in its brief that GEICO argued early on in this lawsuit (when it removed the action to federal court) that Gerber *did* have standing. As we have already noted, however, standing cannot be waived or conceded, and we must independently decide whether it exists.

18

and it is "misguided" to "shift the . . . inquiry" to the assignee) (citing *Crossman*, 273 F.2d at 725; *Houk,* 173 F.2d at 825).[6]  And we can see no potential future threat to Carruthers, other than the possibility that he may someday be in another car accident; sustain an injury entitling him to PIP benefits; and still be insured by GEICO under the same or a similar policy being interpreted the same way, thereby having this issue present itself again.  But, that is too contingent to constitute a "substantial likelihood" of future injury.  *See, e.g., Emory,* 756 F.2d at 1552 (to satisfy Article III, the case or controversy cannot be "conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury").

In the absence of a claim for money damages or substantial likelihood that Carruthers will suffer a future injury—both of which Gerber was careful to avoid alleging here—Gerber has no standing to pursue this case.

### IV.

We recognize that this appeal raises an important issue for GEICO's Florida PIP policyholders and for medical providers treating them.  And we recognize, too, that the lawsuit has been pending for several years and has consumed a lot of both judicial and attorney resources.  If we could, we would reach the merits and give

---

[6] Although an unpublished opinion is not binding, it may be cited as persuasive authority. *See, e.g., Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) (citing *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000), in turn citing 11th Cir. R. 36-2).

19

finality to the questions presented.  But we cannot.  "'In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims.'"  *CAMP Legal Def. Fund,* 451 F.3d at 1269 (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005)).  Again, "standing is 'perhaps the most important' jurisdictional doctrine, and, as with any jurisdictional requisite, we are powerless to hear a case when it is lacking."  *Bochese,* 405 F.3d at 974 (citation omitted).

Because the District Court had no jurisdiction to entertain this suit, we **VACATE** its judgment.  The District Court is instructed to enter an order remanding the case to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.[7]

**SO ORDERED.**

---

[7] We acknowledge "the fundamental principle that state courts are the final arbiters of state law."  *See Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997).  For that reason, on remand, the state court should engage anew in any contract interpretation necessary to its standing or merits determinations.

20

BRANCH, Circuit Judge, concurring in part and concurring in the judgment:

I concur with the judgment in full and with the panel opinion except for the portion that analyzes exhaustion of benefits.  I find that analysis irrelevant given that Gerber seeks only declaratory relief.

The oddness of this case calls for special emphasis.  Gerber has deployed a variety of tactics that make it hard to believe a case like this one will ever arise again.  In particular, Gerber vigorously argued in the district court that it lacked Article III standing, and in doing so it expressly disclaimed any interest in future relief.  Nevertheless, Gerber decided to avoid the rigors of Rule 23(b)(3) of the Federal Rules of Civil Procedure and to move to certify a class only under Rule 23(b)(2)—a rule intended, in part, to confer the prospective relief Gerber had disclaimed.[1]

---

[1] If a class action meets certain prerequisites laid out in Rule 23(a), a class action may be maintained under one of Rule 23(b)'s three provisions.  Rule 23(b)(1) is not relevant here.  Rule 23(b)(2) provides for a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Rule 23(b)(3) provides for a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As the Supreme Court has explained, the "procedural protections attending the (b)(3) class—predominance, superiority, mandatory notice, and the right to opt out—are missing from (b)(2) . . . ."  *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 362 (2011).

With these things in mind, I agree with the panel that Gerber—and by extension Carruthers[2]—lacks standing.  But I agree only with the panel's analysis that concludes that Gerber and Carruthers lack an interest in future relief.  I believe that analysis is dispositive on its own.

Gerber and Carruthers seek only a declaration that the PIP requires GEICO to pay 100% of certain charges rather than 80%.  The only thing that matters, then, is whether Gerber and Carruthers have an interest in any future relief conferred by the declaration they seek.  *See Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."); *id.* at 1348 ("Injury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment.").

The panel correctly explains that a plaintiff need not seek monetary relief in a declaratory judgment action.  Yet the panel believes that it matters whether

---

[2] I agree with the panel that Gerber stands in Carruthers's shoes as assignee.  But that is not how the issue is framed, as Gerber purports to represent a class of healthcare providers that received an assignment of benefits.  The district court's declaration also focuses on those providers.  *See A & M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 291 F. Supp. 3d 1318, 1344 (S.D. Fla. 2017) ("[I]f a provider submits a bill to GEICO that is less than 200 percent of the applicable fee schedule, GEICO shall pay the provider 100 percent of the amount billed.").  Ultimately, we need not resolve the confusion.  Neither Gerber nor Carruthers has standing to seek declaratory relief in this case—on behalf of themselves or anyone else.

Gerber and Carruthers were paid beyond the PIP limit. The panel reasons that if Gerber and Carruthers have exhausted their benefits, they have not suffered an injury and will not benefit from a favorable declaration.

The problem is that, contrary to GEICO's and the panel's assertion, this case is not about exhaustion of benefits. Again, Gerber's operative complaint seeks only a declaratory judgment regarding how GEICO should pay certain charges. Yet Gerber has disclaimed the notion that GEICO will underpay it in the future. *See* Doc. 7 at 7–9; Doc. 40 at 4. That disclaimer, not any money GEICO has paid Gerber in the past, is why Gerber lacks standing.

In short, it does not matter how much money Gerber and Carruthers have been paid. For that reason, the panel's discussion of mootness is also irrelevant. GEICO could not buy its way out of this declaratory judgment action—before or after the action began. A declaratory judgment lawsuit requires the plaintiff to prove a substantial likelihood of future harm. Gerber has disclaimed any such harm. The panel and I agree on this point. But I believe it should be the beginning and end of our standing inquiry.