DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GEICO INDEMNITY COMPANY,**
Appellant,

v.

**MURANSKY CHIROPRACTIC P.A.** a/a/o **CARLOS DIESTE,**
Appellee.

No. 4D21-457

[June 24, 2021]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Betsy Benson, Judge; L.T. Case Nos. CACE19-6279 and COCE17-6312.

Michael A. Rosenberg, Peter D. Weinstein and Thomas L. Hunker of Cole, Scott & Kissane, P.A., Plantation, for appellant.

Mac S. Phillips of Phillips | Tadros, P.A., Fort Lauderdale, for appellee.

DAMOORGIAN, J.

Geico Indemnity Company ("Geico") appeals the county court's order denying its motion for summary judgment and entering summary judgment in favor of Muransky Chiropractic P.A. ("Provider"). Geico challenges the final judgment on the following grounds: (1) the court fundamentally erred in entering summary judgment in Provider's favor where Provider never moved for summary judgment; (2) the court based its decision on a now vacated federal district court decision; and (3) the court misinterpreted the insurance policy by concluding that Geico was obligated to pay 100% of Provider's billed amounts. For the reasons stated below, we affirm.

## Background

The underlying case arose when Carlos Dieste ("the insured") was injured in a car accident and sought medical treatment from Provider. In order to receive treatment, the insured assigned his rights to receive PIP benefits under his policy with Geico to Provider. Provider subsequently sent its bills to Geico, but Geico only paid 80% of the billed amounts.

In 2017, Provider filed a complaint for breach of contract and declaratory relief.  In the declaratory relief claim, Provider alleged that it billed Geico for an amount less than 80% of the schedule of maximum charges and that Geico must pay the entirety of those charges "without taking any further reductions or copayment; or alternatively pay 80% of 200% of the Medicare Part B participating fee schedule amount."  In support thereof, Provider referenced a personal injury protection amendment ("FLPIP Amendment") to GEICO's policy ("the policy") which, in relevant part, stated: "[a] charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted."  Geico answered the complaint and raised as an affirmative defense that it paid the billed amounts in full pursuant to section 627.736(5)(a)2., Florida Statutes, and "the new/amended policy of insurance issued."

Although Provider never moved for summary judgment, Geico filed a "response to summary judgment" and moved for summary judgment itself.  In its motion, Geico "agree[d] that because [Provider's] charge was lower than the fee schedule rate, it was allowed at the charged amount," but argued that the 20% coinsurance still applied.  In support thereof, Geico referenced a document titled as follows:

**IMPORTANT NOTICE**

**FEE SCHEDULE ENDORSEMENT**
**USE OF MEDICAL FEE SCHEDULE FOR PERSONAL INJURY**
**PROTECTION CLAIMS**
**THIS NOTICE IS ENCLOSED IN COMPLIANCE WITH FLORIDA**
**STATUTE 627.736**

**Effective January 1, 2013**

This notice ("the M608 Notice") was presumably sent to the insured when the policy was issued.[1]  The M608 Notice states that Geico will "limit reimbursement of medical expenses to 80 percent of a properly billed reasonable charge, but in no event will [Geico] pay more than 80 percent of the following schedule of maximum charges."  Notably, the M608 Notice does not say that it is part of the policy and the declarations page of the policy does not list it as an amendment or endorsement to the policy.

---

[1]  It is unclear whether the notice was attached to the policy or sent to the insured separately.

The court ultimately entered final summary judgment in favor of Provider, reasoning:

> The parties stipulated that there are no facts in dispute, and the sole issue presented to the Court for adjudication is whether Geico was obligated to pay 80% [o]r 100% of the charges at issue. For the reason set forth below, Geico was obligated to pay 100% of the charges that are less than 200% of the allowable amount under participating physicians fee schedule of Medicare Part B. Accordingly, [Provider's] Motion for Summary Judgment is GRANTED and final judgment is hereby entered in [Provider's] favor.

In so holding, the court based its decision in part on *A&M Gerber Chiropractic LLC v. Geico General Insurance Co.* (*Gerber I*), 291 F. Supp. 3d 1318 (S.D. Fla. 2017). In that class action suit, the Southern District held that the M608 Notice was not an endorsement or amendment to the policy and that Geico was required to pay the entirety of billed amounts which are less than 200% of the fee schedule. *Id.* at 1339–44. Given the identity of the issues and the parties, and the dispositive nature of the legal issue that was decided in *Gerber I*, the county court concluded that the parties fell within the class definition and that the *Gerber I* ruling was binding on its decision. The court then entered summary judgment in Provider's favor in the amount of $360 plus interest.

This appeal follows.

## Analysis

"A trial court's order entering final summary judgment is reviewed de novo." *Hale v. State Farm Fla. Ins. Co.*, 51 So. 3d 1169, 1171 (Fla. 4th DCA 2010). Likewise, because one of the questions presented on appeal requires this Court to interpret provisions of the PIP statute as well as Geico's insurance policy, our standard of review is de novo. *Allstate Ins. Co. v. Orthopedic Specialists*, 212 So. 3d 973, 975 (Fla. 2017). Finally, to the extent Geico raises an unpreserved fundamental error argument, we also apply the de novo standard. *State v. Smith*, 241 So. 3d 53, 55 (Fla. 2018).

*a) Whether fundamental error occurred?*

Geico first argues that the court fundamentally erred by entering judgment in Provider's favor where Provider never moved for summary judgment. Under normal circumstances, we would agree with Geico.

3

*See Levin v. Kleeman*, 229 So. 3d 1290, 1291 (Fla. 5th DCA 2017) ("The trial court erred in granting summary judgment when no motion for summary judgment was pending."). In the present case, however, Geico filed a response to Provider's non-existent motion for summary judgment and argued therein, as it did in its own motion for summary judgment, that it was only required to pay 80% of the billed amounts. Thus, and although we acknowledge that no motion appears in the record, Geico was nonetheless on notice and had the opportunity to respond. *Cf. Ness Racquet Club, LLC v. Ocean Four 2108, LLC*, 88 So. 3d 200, 202 (Fla. 3d DCA 2011) ("Where a party has not filed a summary judgment motion or where no notice or opportunity to be heard has been given to the opposing side to present opposing affidavits, a trial court may not sua sponte grant summary judgment in favor of the non-movant.").

It is worth noting that in its own motion for summary judgment, Geico alleged no material facts were in dispute and the only legal issue for the court to resolve was whether Geico was required to pay the billed amounts in full or 80% of the billed amounts. *Cf. id.* at 202–03 (sua sponte entry of summary judgment in favor of non-movant is especially disfavored when issues of fact remain). This was the same legal issue presented in Provider's complaint. In other words, this is not a situation where summary judgment was entered on a legal basis that was not before the court. *Cf. Hall v. Marion Cnty. Bd. of Cnty. Comm'rs*, 236 So. 3d 1147, 1153 (Fla. 5th DCA 2018) (error to sua sponte enter summary judgment in favor of non-movant on a claim that was not properly before the court). In sum, because Geico ultimately had a "full and fair opportunity to meet the proposition that there is no genuine issue of a material fact," fundamental error did not occur. *Id.* at 1153–54 (citation omitted).

*b) Whether Gerber I applies?*

Geico next argues that *Gerber I* was vacated after the county court entered its order and has no application to the instant case. *See A&M Gerber Chiropractic LLC v. Geico Gen. Ins. Co.* (*Gerber II*), 925 F.3d 1205, 1216 (11th Cir. 2019). In *Gerber II*, the Eleventh Circuit vacated the Southern District's decision in *Gerber I* for lack of standing. *Id.* (declining to reach the merits as to whether Geico's policy requires 100% reimbursement for billed amounts below the statutory fee schedule). We agree with Geico that *Gerber I* has no application to the instant case in light of *Gerber II*. Nonetheless, as will be illustrated below, the court's conclusion that Geico was required to pay 100% of the billed amounts was correct. Accordingly, we need not reverse on this basis.

4

*c) Whether coinsurance applies?*

Geico lastly argues that the court misinterpreted the PIP statute and policy by concluding that Geico was required to pay 100% of Provider's billed amounts and that coinsurance did not apply. Specifically, Geico argues that the Florida PIP statute requires it to pay only 80% of billed amounts unless Geico expressly waives this requirement. Moreover, Geico argues that when read together, the M608 Notice and the FLPIP Amendment limit reimbursement to 80% of billed amounts, regardless if the billed amounts are less than 80% of the fee schedule.

"In interpreting an insurance contract, we are bound by the plain meaning of the contract's text." *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011). If the text is "plain and unambiguous," we "must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *Id.* at 569–70 (quoting *Travelers Indem. Co. v. PCR, Inc.*, 889 So. 2d 779, 785 (Fla. 2004)). In doing so, we consider whether the policy was "amplified, extended, or modified by any application therefor or any rider or endorsement thereto." § 627.419(1), Fla. Stat. (2017); *see also Geico Gen. Ins. Co. v. Virtual Imaging Servs.*, 141 So. 3d 147, 157 (Fla. 2013) (holding that for an exclusion or limitation "to be enforceable, the insurer must clearly and unambiguously draft a policy provision to achieve that result").

We first address Geico's argument that section 627.736, Florida Statutes (2017), mandates coinsurance on all billed amounts unless an insurance company expressly waives it.

The Florida PIP statute authorizes insurers to limit reimbursement to 80% of an amount set by a fee schedule, *see* § 627.736(5)(a)1.a.–f., by electing to do so in its policy, *see* § 627.736(5)(a)5. Specifically, subparagraph 1. of section 627.736(5)(a) states:

> 1. The insurer may limit reimbursement to 80 percent of the following schedule of maximum charges:
>
> . . . .
>
> f. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
>
> (I) The participating physicians fee schedule of Medicare Part B . . . .

5

§ 627.736(5)(a)1., Fla. Stat.  Subparagraph 5. further provides that:

> 5. An insurer may limit payment as authorized by this paragraph only if the insurance policy includes a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in this paragraph.  A policy form approved by the office satisfies this requirement.  If a provider submits a charge for an amount less than the amount allowed under subparagraph 1., the insurer **may** pay the amount of the charge submitted.

§ 627.736(5)(a)5., Fla. Stat. (emphasis added).

In other words, under the PIP statute, if the billed amounts are less than 80% of the fee schedule, the insurer may pay the billed amounts in full or pay the 80% reimbursement rate of maximum charges.  *See Geico Indem. Co. v. Accident & Inj. Clinic, Inc.* (*Irizarry*), 290 So. 3d 980, 984 (Fla. 5th DCA 2019) (analyzing the PIP statute as a whole and concluding that "the amount allowed under subparagraph 1" language in subsection 5. "necessarily encompasses 80% of the applicable fee schedule option" and therefore "if the billed amount is *less than 80% of the fee schedule* (the required amount an insurer must pay), the insurer may opt to pay the lower billed amount in full"); *Revival Chiropractic LLC v. Allstate Ins. Co.*, No. 6:19-cv-445-PGB-LRH, 2020 WL 2483583, at *4 (M.D. Fla. Mar. 5, 2020), *appeal docketed,* No. 21-10559 (11th Cir. 2021) ("For instance, if a provider submits a bill for $100 and the amount allowed under the Schedule for that service is $150, the insurer could reimburse the provider $120 (80 percent of the amount allowed under the Schedule) or $100 (the Lesser Charge).").  Therefore, Geico's argument that the statute requires coinsurance to apply to all billed amounts is clearly erroneous as the statute merely provides that an insurer may opt to limit reimbursement to the typical 80% reimbursement rate.  *See* § 627.736(5)(a)5., Fla. Stat. *Kingsway Amigo Ins. Co. v. Ocean Health, Inc.*, 63 So. 3d 63, 68 (Fla. 4th DCA 2011) ("An insurance company is not precluded from offering greater coverage than that required by statute.").

We next address whether Geico is obligated to pay 100% of Provider's billed amounts under the FLPIP Amendment.  The FLPIP Amendment to the policy provides in relevant part:

**PAYMENTS WE WILL MAKE**
The Company will pay in accordance with the Florida Motor Vehicle No Fault Law (as enacted, amended, or newly enacted), and where applicable in accordance with all fee schedules contained in the Florida Motor Vehicle No Fault Law, to or for the benefit of the injured person:

(A) Eighty percent (80%) of **medical benefits** which are **medically necessary**, pursuant to the following schedule of maximum charges contained in the Florida Statutes 627.736(5)(a)1., (a)2., and (a)3.:

 . . . .

  6. For all other medical services, supplies, and care, 200 percent of the allowable amount under:
   (I). The participating physicians' fee schedules of Medicare Part B . . .

 . . . .

  ***A charge submitted by a provider, for an amount less than the amount allowed above, shall be paid in the amount of the charge submitted.***

(third emphasis added).

As demonstrated in the FLPIP Amendment's plain language, the policy does not mandate the insured to pay coinsurance when the provider has billed "*for an amount less than the amount allowed above.*" (emphasis added); *see Menendez*, 70 So. 3d at 569–70. Rather, the policy indicates Geico's promise to pay certain charges "in the amount of the charge submitted," *i.e.*, 100% of billed amounts less than the 80% reimbursement rate. Additionally, if 20% coinsurance were applicable under this clause, it "would render § 627.736(5)(a)[5.] unnecessary and meaningless because common sense dictates that no insurer would ever pay the full amount of [billed amounts] as provided under § 627.736(5)(a)[5.], if it could, as [the insurer] argues, pay only 80 percent of [billed amounts]." *Revival Chiropractic LLC*, 2020 WL 2483583, at *5.

We next address Geico's argument that the M608 Notice limits reimbursement to 80% of billed amounts. As an initial matter, the M608 Notice was likely not incorporated into the policy. As noted in the facts, the record is unclear whether the M608 Notice was attached to the policy

7

or separately sent to the insured. *See* 2 *Couch on Insurance* § 18:19 (3d ed. 2005) (an endorsement is "a writing added or attached to a policy or certificate of insurance which expands or restricts its benefits or excludes certain conditions from coverage"). Moreover, the M608 Notice does not contain language that it was intended to be an endorsement to the policy. For example, unlike the FLPIP Amendment which states that it is replacing another section of the policy, the M608 Notice refers to the policy as a separate document where it states "Personal Injury Protection Coverage is subject to the terms, conditions and exclusions in your policy. Please read your policy carefully." Thus, no language indicates Geico's intent for the M608 Notice to modify the policy. *Cf. Gotham Ins. Co. v. W. Coast Fire. Prot. Corp.*, 752 F. Appx. 793, 797 (11th Cir. 2018) ("Because the parties plainly expressed in the endorsement that it modifies the policy, we must treat it as part of the policy. To interpret the policy not to include the . . . [e]ndorsement would render the endorsement entirely meaningless and run afoul of the Florida Supreme Court's instruction that we must 'endeavor[] to give every provision its full meaning and operative effect.'" (alteration in original) (quoting *Auto-Owners Ins. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000))). Moreover, the policy's declarations page does not contain any reference to the M608 Notice but specifically mentions the FLPIP Amendment. *See* 2 *Couch on Insurance* § 18:19 n.6 ("Endorsement preclud[ed] coverage . . . where physically attached to the policy when delivered to the insured and the endorsement stated that it formed a part of the policy, and the declarations on the policy face referred to the endorsement." (citing *Anderson v. Aetna Cas. & Sur. Co.*, 432 S.W.2d 151 (Tex. Civ. App. 1968))). Based on the above distinctions, Geico failed to incorporate the M608 Notice into the policy as nothing indicates that the M608 Notice was intended to modify the policy.

At any rate, even if we were to consider the M608 Notice, it would not support Geico's argument. Primarily, the M608 Notice does not state that Geico will pay 80% of billed amounts less than the 80% reimbursement rate. *See Menendez*, 70 So. 3d at 569–70. If any such interpretation were possible, it would conflict with section 627.736(5)(a)5.'s purpose. *See Hernandez v. Crespo*, 211 So. 3d 19, 25 (Fla. 2016) ("Contractual provisions which contravene a statute or legislative intent are injurious to the public good, violate public policy, and are therefore unenforceable."); *Irizarry*, 290 So. 3d at 983 ("[I]f the billed amount is *less than 80% of the fee schedule* (the required amount an insurer must pay), the insurer may opt to pay the lower billed amount in full." (emphasis in original) (citing section 627.736(5)(a)5., Fla. Stat.)). All the M608 Notice does is reaffirm what is provided for in the policy and PIP statute.

In sum, Geico is unable to point to policy language indicating that 20% coinsurance applies to billed amounts below the 80% reimbursement rate. *See Virtual Imaging Servs.*, 141 So. 3d at 157. Accordingly, we affirm because the policy's plain language indicates that Geico is obligated to pay 100% of Provider's billed amounts.[2] *See Menendez*, 70 So. 3d at 569–70.

*Affirmed.*

WARNER and KUNTZ, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***

---

[2] We do not comment on whether the result would have been the same had Geico contested Provider's billed amounts. Namely, Geico moved for summary judgment traveling under Provider's theory that it billed under the 80% reimbursement rate. The trial court's judgment more broadly held that Geico was 100% responsible for billed amounts below 200% of the statutory fee schedule. This conclusion was technically correct as an amount below 200% necessarily incorporates an amount below 80%. Additionally, while Geico did not agree with the trial court's ultimate holding, it "agreed on the language in the proposed Final Judgment." In other words, we make no determination as to what the result would have been had Geico contested billed amounts under the 200% of the statutory fee schedule but above the 80% reimbursement rate.