**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| YVONNE GREEN, WILMINGTON PAIN & REHABILITATION CENTER, and REHABILITATION ASSOCIATES, P.A., on behalf of themselves and all others similarly situated, | ) ) ) ) ) | C.A. No.: N17C-03-242 EMD CCLD |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| GEICO GENERAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

Submitted: May 15, 2019[1]
Decided: August 27, 2019

*Upon Plaintiffs' Motion for Class Certification*
***GRANTED***

Richard H. Cross, Jr., Esquire, Christopher P. Simon, Esquire, Cross & Simon, LLC, Wilmington, Delaware *Attorneys for Plaintiffs.*

Paul A. Bradley, Esquire, Stephanie A. Fox, Esquire, Maron Marvel Bradley Anderson & Tardy LLC, Wilmington, Delaware, George M. Church, Esquire, Laura A. Cellucci, Esquire, Miles & Stockbridge P.C., Baltimore, Maryland, Meloney Perry, Perry Law, P.C., Dallas, Texas *Attorneys for Defendant GEICO General Insurance Company.*

**DAVIS, J.**

## I.   INTRODUCTION

Yvonne Green, Wilmington Pain & Rehabilitation Center ("WPRC"), and Rehabilitation Associates, P.A., on behalf of themselves and others similarly situated (collectively, the "Plaintiffs") filed suit against GEICO General Insurance Company ("Geico"). As alleged, Geico

---

[1] The Official Transcript from the May 10, 2019 hearing was docketed on July 8, 2019.

uses two computerized models (collectively, the "Rules") to evaluate personal injury protection ("PIP") claims of its insureds. The Plaintiffs argue that Geico uses the Rules to deny valid claims without evaluating the facts underlying the claims. The Plaintiffs seek certification of a class action under Superior Court Civil Rule 23.

As part of the Civil Rule 23 process, the Plaintiffs filed their Plaintiffs' Motion for Class Certification (the "Motion"). The Court held a hearing on the Motion on May 10, 2019. For the reasons set forth below, the Court **GRANTS** the Motion.

## II.  RELEVANT FACTS
### A.  PARTIES

Ms. Green is an individual who resides in Delaware.[2] Ms. Green holds an automobile insurance policy that includes "personal injury protection" or "PIP" coverage with Geico.[3] Ms. Green has tendered a claim for PIP benefits under her Geico insurance policy.

WPRC provides medical services in Delaware and tenders claims for PIP benefits under Geico's insurance policies.[4] Similarly, Rehabilitation Associates, P.A. provides medical services in Delaware and tenders claims for PIP benefits under Geico's insurance policies.[5]

Geico is an insurance company that is incorporated in Maryland with its principal place of business in Washington, D.C.[6] Geico regularly sells insurance within Delaware.[7]

### B.  GEICO'S CLAIMS PROCESSING

The Plaintiffs challenge Geico's process for evaluating PIP claims. Under Delaware law and the insureds' policies, Geico must reimburse all "reasonable and necessary expenses

---

[2] Amended Compl. ¶ 2.
[3] *Id.*
[4] *Id.* ¶ 3.
[5] *Id.* ¶ 4.
[6] *Id.* ¶ 5.
[7] *Id.* ¶ 5.

incurred within two years from the date of the accident"[8] after an insured submits a proof of loss. The reimbursement includes compensation for medical and hospital services. The Plaintiffs contend that Geico relies on computerized Rules to evaluate PIP claims, which purportedly analyze all claims the same way, regardless of the facts giving rise to the underlying claim.[9] The Plaintiffs argue that this process violates Delaware law and the terms of Geico's insurance policies. The Rules and Geico's use of the Rules in assessing PIP claims are the basis of this litigation.

The first rule at issue is the Geographic Reduction Rule (the "GRR").[10] Under the GRR, Geico sets an alleged arbitrary cap at the "80th percentile" of claims submitted to Geico within a particular geographic region.[11] As a result of the GRR, the Plaintiffs claim that 20% of bills submitted to Geico for reimbursement are automatically deemed "unreasonable," without inquiry into the facts giving rise to the claim or any factors that could impact pricing.[12] Based on this, the Plaintiffs allege that the GRR is, in effect, a secret cap on what Geico will pay.[13]

The second rule at issue is the Passive Modality Rule (the "PMR").[14] Under the PMR, the Plaintiffs allege that Geico automatically denies payment for certain "passive modalities" when treatment occurs more than eight weeks from the date of the automobile accident.[15] Geico enforces the PMR without making any inquiry into the facts or treatment to determine if treatment is appropriate.[16] Based on this, the Plaintiffs allege that the PMR is, in effect, a secret

---

[8] 21 *Del. C.* § 2118B.
[9] Amended Compl. ¶¶ 13-31.
[10] *Id.* ¶ 13.
[11] *Id.* ¶ 15.
[12] *Id.* ¶ 14.
[13] *Id.* ¶ 84.
[14] *Id.* ¶ 22.
[15] *Id.*
[16] *Id.* ¶ 23.

3

policy exclusion on what Geico will pay.[17] When Geico denies its insureds' claims, the insureds are often "balance billed" by medical providers.[18] Collection agencies then collect these bills from the insureds, rather than from Geico.[19]

In the Amended Complaint, the Plaintiffs describe Geico's claims process. Geico first confirms that there is a causal connection between the underlying accident and the treatment for which an insured seeks payment. [20] Then, Geico uses its claims processing system, which includes the Rules, to approve or deny claims.[21] Finally, Geico's system generates an explanation of benefits, which is sent to the insured and medical provider.[22] For example, when Geico reduces a bill under the GRR, Geico sends a letter, which states "[t]he service charge exceeds an amount that is reasonable when compared to the charges of other providers in the same geographic area." Geico allows insureds to challenge Geico's reduction or denial of claims.[23] Pursuant to a re-evaluation, Geico will re-run a claim through its claims processing system. The Plaintiffs contend that Geico does not disclose its claims handling policies or the GRR or the PMR to its insureds.[24]

The Plaintiffs contend that Geico has conflicting policies and provides inconsistent information to its insureds. As evidence, the Plaintiffs cite the following facts: Geico's internal documents note that Geico only resolves claims disputes with medical providers, but Geico

---

[17] *Id.* ¶ 86.
[18] *Id.*
[19] *Id.* ¶ 33.
[20] *Id.* ¶ 11.
[21] *Id.* ¶ 12.
[22] *Id.*
[23] Opp. at 10.
[24] Amended Compl. ¶¶ 83, 85.

represents to its insureds that the insureds may dispute their claims;[25] Geico has noted, in its internal discussions, that it does not negotiate problems with medical providers.[26]

### C. PLAINTIFFS SUBMITTED PIP CLAIMS TO GEICO

Ms. Green was injured in a car accident on September 12, 2011.[27] After receiving medical treatment, Ms. Green, as an individual insured, submitted her medical bills to Geico for repayment under her PIP policy.[28] Geico used the GRR and PMR in processing Ms. Green's claims for PIP benefits.[29] As a result, the Plaintiffs contend that Geico denied payment of covered PIP benefits to Ms. Green without reasonable justification.[30]

Similarly, WPRC and RA, as assignees of their insured patient's claims, submitted claims to Geico for processing and payment for treatment they provided.[31] When WPRC and RA submitted claims to Geico directly, Geico treated WPRC and RA as the claimants under the insured's policy.[32] In processing WPRC and RA's claims for PIP benefits, Geico used the GRR and the PMR.[33] As a result, the Plaintiffs assert that Geico denied payment of covered PIP benefits to WPRC and RA without reasonable justification.[34]

### D. PROCEDURAL HISTORY

On March 10, 2014, Ms. Green filed the initial class action complaint (the "Initial Chancery Complaint") against Geico in the Delaware Court of Chancery. The Initial Chancery Complaint alleged causes of action for Injunctive Relief, Bad Faith Breach of Contract, Breach

---

[25] *Id.* ¶ 34.
[26] *Id.* ¶ 35.
[27] *Id.* ¶ 44.
[28] *Id.* ¶¶ 44-48.
[29] *Id.* ¶ 47.
[30] *Id.* ¶ 48.
[31] *Id.* ¶¶ 51, 58.
[32] *Id.* ¶¶ 52, 59.
[33] *Id.* ¶¶ 54, 61.
[34] *Id.* ¶¶ 55, 62.

of Duty of Fair Dealing, Consumer Fraud, and Tortious Interference with Contract. The Initial Chancery Complaint also sought class action status pursuant to Court of Chancery Rule 23. Geico filed its initial responsive pleading on April 14, 2014.

The case was dormant until February 2015 when the Chancery Court requested a status report from the parties. Ms. Green's counsel requested a stay pending the outcome of a motion to decertify classes filed in a similar case in the United States District Court for the District of Delaware (the "Delaware District Court") titled *Johnson v. GEICO Casualty Co.* In September 2015, the Delaware District Court decertified two classes previously certified. Upon being advised on this outcome, the Chancery Court conducted a status conference on November 3, 2015.

On December 11, 2015, Ms. Green filed an amended class action complaint (the "Amended Chancery Complaint") in the Chancery Court. The Amended Chancery Complaint added two additional plaintiffs, WPRC and RA, and replaced four of the five original counts. The Amended Chancery Complaint asserted claims for Breach of Contract, Bad Faith Breach of Contract, Declaratory Relief, and Deceptive Trade Practices Act violations.

Geico then moved to dismiss the Amended Chancery Complaint. Following a hearing and additional briefing, the Chancery Court dismissed the Amended Chancery Complaint for lack of subject matter jurisdiction on February 1, 2017. The Plaintiffs then elected a timely transfer to this Court on February 24, 2017.

On March 20, 2017, Plaintiffs filed the Class Action Complaint. The Class Action Complaint is essentially identical to the Amended Chancery Complaint, asserting the same claims for Breach of Contract, Bad Faith Breach of Contract, Declaratory Relief, and Deceptive

6

Trade Practices Act violations.[35] The Class Action Complaint alleged class certification on behalf of all persons, including insureds and medical providers, whose claims for PIP benefits were denied or reduced as a result of the GRR and the PMR. The members of this class are referred to as "The Claimant Class" and the "The Insured Class."

On April 4, 2017, Geico moved to dismiss the Class Action Complaint through Defendant Geico General Insurance Company's Motion to Dismiss Plaintiffs' Class Action Complaint (the "Original Motion"). On July 12, 2017, the Court granted a stipulation to allow Plaintiffs to file the Amended Complaint thereby rendering the pending motion moot.[36]

The Amended Complaint has four counts, which are substantially similar to the counts in the previous pleadings. In Count I, the Plaintiffs allege that Geico breached the Plaintiffs' insurance policies by Geico's use of the Rules. In Count II, the Plaintiffs' assert that Geico committed a bad faith breach of contract by arbitrarily reducing or denying the Plaintiffs' insurance claims. In Count III, the Plaintiffs seek a declaratory judgment that Geico's continued use of the Rules is unlawful and violates 21 *Del.* C. § 2118. Finally, in Count IV, the Plaintiffs contend that Geico engaged in unfair and deceptive practices in violation of 6 *Del.* C. §2532(a)(5) and (12). Specifically, the Plaintiffs claim that Geico violates 6 *Del.* C. §2532(a)(5) and (12) by failing to disclose its use of the Rules to insureds and failing to perform an investigation before reducing or denying insureds' claims. The Plaintiffs seek monetary damages, attorneys' fees, and a declaratory judgment.

---

[35] The only differences between the Amended Class Action Complaint and the present Class Action Complaint are: (i) the Amended Class Action Complaint requested an injunction requiring GEICO to recalculate all claims without using the Rules, which Plaintiffs have replaced with a request for damages resulting from GEICO's use of the Rules, and (ii) unlike the Amended Class Action Complaint, the present Class Action Complaint includes a request for punitive damages.

[36] D.I. 31.

On August 1, 2017, Geico filed a Motion to Dismiss the Amended Complaint (the "MTD"). The Court issued an opinion granting in part and denying in part the MTD on April 24, 2018. The Court dismissed Count IV but allowed the rest of the claims to proceed.

On August 17, 2018, the Plaintiffs filed Plaintiffs' Opening Brief in Support of Motion for Class Certification. Then, on February 15, 2019, Geico filed Defendant Geico General Insurance Company's Answering Brief in Opposition to Plaintiffs' Motion for Class Certification (the "Opposition"). The Plaintiffs filed Plaintiffs' Reply Brief in Support of Motion for Class Certification (the "Reply") on April 2, 2019. On May 10, 2019 the Court held a day-long hearing (the "Hearing") on the Motion, the Opposition and the Reply. On May 13, 2019 and May 15, 2019, GEICO and the Plaintiffs submitted post-Hearing letters to the Court addressing questions raised during the Hearing.

### E. PROPOSED CLASS ACTION

In their submissions, the Plaintiffs propose four classes: [37]

1. *The Claimant Class* – GRR (All Counts): All persons who, during the period from March 10, 2011 to the date of class notice, submitted a claim to Geico pursuant to Geico's Delaware automobile insurance policy's PIP coverage, which claim:

   a. was paid by Geico at an amount less than the stated policy limits, and

   b. was reduced by Geico as a result of the "Geographic Reduction Rule."

2. *The Claimant Class* – PMR (All Counts): All persons who, during the period from March 10, 2011 to the date of class notice, submitted a claim to Geico pursuant to Geico's Delaware automobile insurance policy's PIP coverage, which claim:

   a. was paid by Geico at an amount less than the stated policy limits, and

---

[37] Mot. at 17-18.

b. was denied by Geico as a result of the "Passive Modality Rule."

3. *The Insured Class* – GRR (Count III): All persons who, during the period from March 10, 2011 to the date of class notice, were insureds whose claim was submitted to Geico pursuant to Geico's Delaware automobile insurance policy's PIP coverage which claim:

    a. was paid by Geico at an amount less than the stated policy limits and

    b. was reduced by Geico as a result of Geico's "Geographic Reduction Rule."

4. *The Insured Class* – PMR (Count III): All persons who, during the period from March 10, 2011 to the date of class notice, were insureds whose claim was submitted to Geico pursuant to Geico's Delaware automobile insurance policy's PIP coverage which claim:

    a. was paid by Geico at an amount less than the stated policy limits and

    b. was denied by Geico as a result of Geico's "Passive Modality Rule."

## III.    STANDARD OF REVIEW

The Delaware civil rule[38] on class actions is substantially similar to the federal civil rule[39] on class actions.[40] "Where . . . the Superior Court's Rules of Civil Procedure closely track the Federal Rules of Civil Procedure, cases interpreting the federal rules are persuasive authority for [the Court's] construction purposes."[41]

Delaware follows a two-step analysis to certify a class. The first step requires that a class satisfy the following requirements in Civil Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy.[42]

---

[38] Super. Ct. Civ. R. 23.
[39] Fed. R. Civ. P. 23.
[40] *Green v. GEICO Gen. Ins. Co*., 2018 WL 1956287, at *6 (Del. Super. Apr. 24, 2018), appeal refused, 187 A.3d 553 (Del. 2018).
[41] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1286 (Del. 2007) (citing *Hoffman v. Cohen,* 538 A.2d 1096 (Del. 1988)).
[42] Super. Ct. Civ. R. 23(a).

If the Civil Rule 23(a) requirements are met, the second step is to properly fit the action "within the framework provided for in [Civil Rule 23(b)]."[43] Civil Rule 23(b) sets forth three disjunctive requirements: (1) prosecution of separate actions would create a risk of (i) inconsistent or varying adjudications or (ii) adjudications as to one member of the class would be dispositive as to members that are not parties to the adjudications; (2) the party opposing the class has acted or refused to act in a manner generally applicable to the class, thereby making appropriate final equitable relief or corresponding declaratory relief with respect to the class as a whole; or (3) cases where common issues of law or fact predominate.[44] The Plaintiffs argue for class certification under all three categories in Civil Rule 23(b).

The plaintiff bears the burden of establishing that the class meets the Civil Rule 23(a) and (b) requirements.[45]

## IV. DISCUSSION

### A. STANDING

"The concept of 'standing,' in its procedural sense, refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance."[46] "It is concerned only with the question of *who* is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy."[47] "[S]tate courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are 'mere intermeddlers.'"[48]

---

[43] *Wit Capital Group, Inc. v. Benning*, 897 A.2d 172, 179 (Del. 2006).
[44] Super. Ct. Civ. R. 23(b).
[45] *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551–2552 (2011).
[46] *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1382 (Del.1991) (citing 59 Am. Jur. 2dParties § 30 (1989)).
[47] *Id.*
[48] *Id.*

10

Delaware follows the standing requirements articulated by the U.S. Supreme Court in *Lujan v. Defenders of Wildlife*.[49]  The elements of standing are: (1) an injury-in-fact to a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the defendant's conduct; and (3) that the claim is redressable by the Court's favorable decision.[50]

The concept of standing arose at the Hearing and the parties subsequently submitted letters to the Court regarding the class representatives' standing.  Geico argues that Ms. Green does not have standing because she is not seeking monetary damages and does not have a substantial likelihood of future injury. Geico relies on *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,[51] to support its argument.  In response, the Plaintiffs argue that Ms. Green has standing because she suffered an injury when Geico failed to pay her claim.  The Plaintiffs additionally contend that Ms. Green has an ongoing injury and that she is not receiving the benefit of the contractual rights to which she is entitled under her Geico insurance policy.

In *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,[52] the United States Court of Appeals for the Eleventh Circuit found that a plaintiff did not have standing to bring a claim for declaratory judgment against Geico.  This was because the plaintiff did not have a valid claim for monetary damages or a substantial likelihood of future injury.  Specifically, the court found that Geico had already paid the limits of the plaintiff's insurance policy, so the plaintiff was not entitled to monetary damages.  Additionally, the plaintiff's claim for future injury was too speculative and so did not raise a substantial likelihood of future injury.  The court noted that the plaintiff could only suffer a future injury if (i) the plaintiff got into another accident, (ii) the

---

[49] *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1111 (Del. 2003).
[50] *See id.* at 1110.
[51] 925 F.3d 1205, 1216 (11th Cir. 2019).
[52] 925 F.3d 1205, 1211 (11th Cir. 2019).

plaintiff sustained an injury covered under her PIP benefits, and (iii) Geico used the same interpretation of its policy to reduce or deny the plaintiff's claim.

The Court finds that the Plaintiffs have sufficiently alleged that Ms. Green has standing at this stage in the proceedings. Ms. Green has an injury-in-fact because Geico allegedly failed to pay her entire claim of loss under her insurance policy. In addition, Ms. Green continues to suffer injury and may need to submit an additional PIP claim to Geico, which Geico may deny using the Rules. Ms. Green's ongoing injury creates a likelihood of future injury. Next, Geico's denial of Ms. Green's claim is the cause of Ms. Green's injuries because Ms. Green did not receive the payment to which she is entitled. Finally, a favorable ruling by the Court will remedy Ms. Green's harm. Ms. Green is not seeking monetary damages in this case. A favorable ruling will provide a remedy to Ms. Green because the ruling will either (i) require Geico to assess Ms. Green's claim without using the Rules, which may lead to Ms. Green receiving a payment or (ii) require Geico to pay the entire amount of Ms. Green's initial claim . A favorable ruling will also provide a remedy because the ruling will allow Ms. Green to receive the contractual privileges of her insurance policy with Geico.

However, the Court may reconsider Ms. Green's standing after the parties have concluded the discovery process. Specifically, after discovery, the Court may consider the nature and severity of Ms. Green's ongoing injury to see if the injury creates a substantial likelihood that Ms. Green will make another PIP claim. The Court will also consider whether the Plaintiffs have sufficiently alleged that Ms. Green is not receiving the benefit of her bargain with Geico by Geico's continued use of the Rules.

The Court also finds that WPRC and Rehabilitation Associates, P.A. have standing. These class representatives are also not seeking monetary damages. But, these class

12

representatives regularly provide treatment for insureds with Geico's PIP insurance policies. The representatives are likely to submit another claim to Geico which Geico will assess using the Rules. Therefore, the Court finds that these class representatives (i) have a substantial likelihood that Geico will reduce or deny their claims using the Rules, (ii) the reduction or denial will cause the representatives to suffer an injury, and (iii) a favorable decision will stop Geico's use of the Rules and allow the representatives to receive payment for their future claims.

## B. CIVIL RULE 23(a)

A trial court may certify a class only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Civil Rule 23(a) have been satisfied . . . ."[53] "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."[54] "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff[s'] cause of action.'"[55]

### i. Numerosity

First, a class must be "so numerous that joinder of all members is impracticable" in order to meet the numerosity requirement.[56] "Although there is no numerical cutoff under the numerosity requirement, numbers in the proposed class in excess of forty, and particularly in excess of one hundred, have sustained the numerosity requirement."[57] "Delaware courts have held that in determining whether joinder of class members would be impractical depends on the circumstances surrounding the case and not merely the number of class members."[58] Courts look

[53] *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551–2552 (2011) (quoting *General Telephone Co. of Southwest v. Falcon*, 102 S.Ct. 2364 (1982)).
[54] *Id*.
[55] *Id*. (quoting *General Telephone Co. of Southwest v. Falcon*, 102 S.Ct. 2364 (1982)).
[56] Super. Ct. Civ. R. 23(a).
[57] *Smith v. Hercules, Inc.,* 2003 WL 1580603, at *4 (Del. Super. Jan. 31, 2003)
[58] *Id*.

to the "litigational inconvenience" of bringing separate actions versus a class action to assess impracticability.[59]

The Plaintiffs allege that there are 500 class members. Geico does not dispute that the Plaintiffs have satisfied the numerosity requirement. Proceeding as a class action allows the Court to resolve common issues that would otherwise be litigated in hundreds of cases. Therefore, the Court finds that the Plaintiffs satisfy the numerosity requirement.

### ii. *Commonality*

"[T]here [must be] questions of law or fact common to the class" in order to meet the commonality requirement.[60] In addition, the Plaintiffs must "have suffered the same injury."[61] Finally, the Plaintiffs' claims must "depend upon a common contention . . . that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[62]

The Plaintiffs argue that they raise common contentions of law and fact in each of the counts. According to the Plaintiffs, the common contention relevant to each count is that Geico's use of systematic rules to impose a cap (GRR) and exclusion (PMR), in lieu of a proper investigation, violates its duty under its insurance policies and law. The Plaintiffs assert that individual issues are not relevant to the counts.

### a. Declaratory Judgment

The Plaintiffs and Geico contend that Geico has an obligation to pay medical expenses that are reasonable and necessary under Geico's insurance policies with the Plaintiffs, and under Section 2118. Geico, however, goes on to further claim that the Plaintiffs cannot prevail without

---

[59] *Id.*
[60] Super. Ct. Civ. R. 23(a).
[61] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 148 (1982).
[62] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

14

showing that each of the Plaintiffs' claims were reasonable and necessary. According to Geico, this requires an individualized analysis that prevents certification under Civil Rule 23. Geico heavily relies on *Johnson v. GEICO Cas. Co.*[63] to support its argument. In that case with virtually identical facts, the Federal District Court for the District of Delaware found that the plaintiffs' claim for declaratory judgment did not meet the commonality requirement for declaratory judgment.

In another very similar case for a declaratory judgment *Wilmington Pain & Rehab. Ctr., P.A. v. USAA Gen. Indem. Ins. Co.*,[64] the Court found that there was no commonality between the plaintiffs. Specifically, the Court reasoned that because the Delaware PIP statute requires the plaintiffs to show that their claims are reasonable and necessary, which requires a claim-by-claim analysis, there is not sufficient commonality between the claims. In that case, the Court distinguished cases that found commonality where the plaintiffs "attacked the computer software program itself, rather than alleging the amount the insurers ultimately paid was unreasonable."[65]

The Court notes that the Plaintiffs heeded the decision in *Wilmington Pain & Rehab. Ctr., P.A.* when drafting the Amended Complaint. The Plaintiffs' claim for declaratory relief alleges that Geico violated Section 2118B by engaging in bad faith actions such as reducing or denying claims without a proper investigation using the Rules, allowing claims to be balanced-billed, and giving insureds and medical providers conflicting information. The Plaintiffs must then request that Geico re-evaluate their claims, but Geico uses the Rules to re-evaluate claims as well.

Section 2118B requires insurers to promptly pay insureds for their claims. Specifically, Section 2118(a) states,

---

[63] 673 F. Supp. 2d 255, 278 (D. Del. 2009).
[64] 2017 WL 8788707, at *7 (Del. Super. Oct. 17, 2017)(Jurden, P.J.), *appeal refused,* 176 A.3d 124 (Del. 2017).
[65] *Id.*

15

The purpose of this section is to ensure reasonably prompt processing and payment of sums owed by insurers to their policyholders and other persons covered by their policies pursuant to § 2118 of this title, and to prevent the financial hardship and damage to personal credit ratings that can result from the unjustifiable delays of such payments.[66]

Further, Section 2118B(c) mandates that insurers respond to claims within thirty days:

When an insurer receives a written request for payment of a claim for benefits pursuant to § 2118(a)(2) of this title, the insurer shall promptly process the claim and shall, no later than 30 days following the insurer's receipt of said written request for first-party insurance benefits and documentation that the treatment or expense is compensable pursuant to § 2118(a) of this title, make payment of the amount of claimed benefits that are due to the claimant or, if said claim is wholly or partly denied, provide the claimant with a written explanation of the reasons for such denial. If an insurer fails to comply with the provisions of this subsection, then the amount of unpaid benefits due from the insurer to the claimant shall be increased at the monthly rate of:

(1) One and one-half percent from the thirty-first day through the sixtieth day; and
(2) Two percent from the sixty-first day through the one hundred and twentieth day; and
(3) Two and one-half percent after the one hundred and twenty-first day.[67]

Moreover, if the insured has to file suit and obtains a judgment, the insured may be entitled to costs and attorneys' fees.[68]

The Plaintiffs' allegations that Geico purposefully failed to promptly process a claim in good faith by using the Rules instead of some other type of process seem to bear a tenuous connection to the broad processing language of Section 2118B. Still, that and Geico's use of the Rules and alleged failure to individually investigate and properly rule on claims until after the Plaintiffs' request re-evaluation and Geico's conflicting information may violate Section 2118B. An insured is allowed to seek reimbursement for "reasonable and necessary" expenses under

---

[66] 21 *Del. C.* § 2118B(a).
[67] 21 *Del. C.* § 2118B(c).
[68] 21 *Del. C.* § 2118B(d).

2118(a)(2) by making a written request for payment. Section 2118B(c) requires the insurer to process the written request within thirty days and either pay it as reasonable and necessary or provide an explanation for denying the request as unreasonable and unnecessary. It could be determined that the Rules do not constitute a valid processing and denial of those written requests as set forth in 2118B(c).

As contemplated by the Court in *Wilmington Pain & Rehab. Ctr., P.A.*, the Plaintiffs' claim for declaratory judgment meets the commonality requirement because it alleges that Geico's use of the Rules is unlawful. Here, the Plaintiffs raise a common question about whether Geico's use of the Rules violates Section 2118, in lieu of claiming that Geico made unreasonable payments to the Plaintiffs, which raises individualized questions. In simpler words, the Plaintiffs have attacked the computer software programs—*i.e.*, the Rules—rather than alleging the amount the insurers ultimately paid was unreasonable.

### b. Breach of Contract

A breach of an insurance contract requires that (i) there is a valid insurance contract, (ii) the insured plaintiff complied with conditions precedent to the insurer offering coverage, and (iii) the insurer failed to offer the required coverage.[69] The insured plaintiff bears the burden of proving that the insured plaintiff's claims are reasonable and necessary.[70]

Here, as in *Johnson*,[71] the Court finds that the Plaintiffs meet the commonality requirement regarding the breach of contract claim. This is because the Plaintiffs raise common questions of law such as whether the Rules constitute a secret exclusion to the insurance policies and violate Geico's contractual obligation to pay premiums.

---

[69] *Casson v. Nationwide Ins. Co.,* 455 A.2d 361, 365 (Del. Super. 1982).
[70] *See, e.g., Murphy v. United Serv. Auto Ass'n,* 2005 WL 1249374, at *2 (Del. Super. May 10, 2005) ("As a matter of law, the burden lies on the Plaintiff, not on the insurer, to show the expenses were 'reasonable and necessary.'").
[71] *Johnson v. Geico Cas. Co*., 673 F. Supp. 2d 255, 278 (D. Del. 2009).

### c. Bad Faith Breach of Contract

"Under Delaware law, insurance companies owe a duty of good faith and fair dealing to their insureds."[72] "Where an insurer fails to investigate or process a claim or delays payment in bad faith, it is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations."[73] An insurer engages in bad faith breach of contract regarding an insurance contract when the insured plaintiff shows "that the insurer's refusal to honor [the claim] was clearly without any reasonable justification."[74]

Here, as in *Johnson*,[75] the Court finds that the Plaintiffs meet the commonality requirement regarding the bad faith breach of contract claim. This is because the Plaintiffs raise common questions such as (i) whether Geico's use of the Rules constitutes an arbitrary reduction or denial of claims and (ii) whether Geico has any personalized review of claims by humans or factors other than the CPT code, geozip code, etc.

Therefore, the Court finds that the Plaintiffs meet the commonality requirement for all counts and proposed classes.

### iii. Typicality

"[T]he claims or defenses of the representative parties [must be] typical of the claims or defenses of the class" in order to meet the typicality requirement.[76] In this case, neither party disputes that the Plaintiffs meet this requirement. The Court finds that the class representatives' claims are typical of all of the Plaintiffs' claims. This is because Geico has allegedly (i) failed to

---

[72] *Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542, at *3 (Del. Super. Apr. 26, 2001).
[73] *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 264 (Del.1995).
[74] *Albanese v. Allstate Ins. Co.*, 1998 WL 437370, at *2 (Del. Super. July 7, 1998) (citing Casson, 455 A.2d at 369).
[75] *Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 255, 278 (D. Del. 2009).
[76] Super. Ct. Civ. R. 23(a).

conduct reasonable investigations into all of the Plaintiffs' claims and (ii) used the Rules to arbitrary deny all of the Plaintiffs' claims.

### iv. Adequacy

Finally, in order to meet the adequacy requirement, "the representative parties [must] fairly and adequately protect the interests of the class."[77] A "conflict concerning the allocation of remedies amongst class members with competing interest can be fundamental and can thus render a representative plaintiff inadequate."[78] Geico argues that there is an inherent conflict between the Plaintiffs. To support its argument, Geico uses a hypothetical example: if the Plaintiffs prevail, Geico may need to pay a Plaintiff the amount of the Plaintiff's policy cap, rather than an amount reduced by the Rules; then, there may be a conflict between medical providers if the policy cap is not sufficient to pay all of the money that multiple medical providers are owed. The Court notes that this hypothetical conflict may never materialize. Even if the conflict does exist, the conflict does not defeat the adequacy requirement.[79] As the Court noted in *Johnson*,[80] class representatives often compete for a limited pool of funds for relief, but this does not defeat a class representative's ability to adequately serve the interest of a class.

### C. CIVIL RULE 23(b)

#### i. 23(b)(1)

The first disjunctive requirement of Civil Rule 23(b) is:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

---

[77] Super. Ct. Civ. R. 23(a).
[78] *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999)).
[79] *See* 5 James Wm. Moore et al., Moore's Federal Practice § 23.25[2][b] [viii] (3d ed. 2009) (discussing how class members are often economic competitors for a limited pool of relief funds, but this competition does not usually a single class representative from adequately representing class members).
[80] *Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 255, 278 (D. Del. 2009).

19

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[81]

The Plaintiffs contend that they are entitled to certification under 23(b)(1) because allowing multiple suits to proceed instead of a class action might result in courts subjecting Geico to incompatible standards of conduct. Specifically, some courts may allow Geico to use the GRR and PMR while others may not. In response, Geico argues that it would not suffer greater prejudice through individual actions. In fact, Geico argues that individual actions would allow the parties to resolve whether the plaintiffs' claims are reasonable and necessary.

Here, the Court will certify the class action under 23(b)(1). A judgment on the legality of the Rules for the Plaintiffs in this case would have the effect of determining the legality of the Rules for all proposed class members. Therefore, if Geico prevails on the issues relating to the Rules, it is likely to have the effect of pre-ordaining a negative result on causes of action that members of the proposed class could make on their own in the absence of class certification. [82]

### ii. 23(b)(2)

The second category of Civil Rule 23(b) requires that "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."[83]

---

[81] Super. Ct. Civ. R. 23(b).
[82] *See, e.g., DeMaria v. Horizon Healthcare Servs., Inc.*, 2015 WL 3460997, at *7 (D.N.J. June 1, 2015).
[83] Super. Ct. Civ. R. 23(b).

Any monetary damages should (i) "flow automatically" from the injunctive relief and (ii) be readily calculable.[84]

In a case with very similar facts *Wilmington Pain & Rehab. Ctr., P.A. v. USAA Gen. Indem. Ins. Co.*,[85] the Court found that it could not certify plaintiffs' class under 23(b)(2). The Court denied certification because the class lacked sufficient cohesiveness. The Court reasoned that the plaintiffs in the class may have been entitled to different declaratory judgments because of their individual circumstances.

In contrast, *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,[86] the U.S. District Court for the Southern District of Florida certified the plaintiffs' class action. In that case, the plaintiffs sought a declaratory judgment that Geico's use of the GRR was a breach of the parties' contract and a violation of the Florida personal injury benefits statute (Florida Statute 627.736). The court found that the plaintiffs' requested declaratory relief would qualify as injunctive relief "because such a finding would serve as a basis for future injunctive relief." Specifically, the court reasoned that because (1) Geico's policy had not changed since 2013, and (2) that the plaintiffs had defined an open-ended class which covered "any subsequent policies with substantially similar language that were in effect since January 1, 2013," the plaintiffs would be entitled to future injunctive relief.[87]

Here, the Court will follow the reasoning in *A&M Gerber Chiropractic LLC* to certify a class for declaratory judgment under 23(b)(2). Unlike in *Wilmington Pain & Rehab. Ctr., P.A.*, the Plaintiffs in this case seek a declaratory judgment that the Rules are unlawful. The requisite

---

[84] *Moody v. Albemarle Paper Co*., 474 F.2d 134, 142 (4th Cir. 1973).

[85] 2017 WL 8788707, at *7 (Del. Super. Oct. 17, 2017), *appeal refused,* 176 A.3d 124 (Del. 2017).

[86] 321 F.R.D. 688, 700 (S.D. Fla. 2017).

[87] This opinion was vacated on May 30, 2019 because the plaintiff lacked standing. The plaintiff lacked standing because Geico had paid the plaintiff's PIP benefits in full before the plaintiff filed the complaint. *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1216 (11th Cir. 2019).

cohesiveness exists here because a determination on Geico's use of the Rules does not require an individualized analysis of each underlying claim and declaratory relief would cover any subsequent polies with substantially similar language.

### iii. 23(b)(3)

Lastly, Civil Rule 23(b)(3) is satisfied if:

The Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matter pertinent to the findings include:

> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D) The difficulties likely to be encountered in the management of a class action.[88]

In order to certify a class action under Civil 23(b)(3), the plaintiffs must (i) raise common questions of law or fact, and (ii) class action must be superior to other methods of resolution (such as joinder).[89] The essential elements of the cause of action may not require individual treatment in order for plaintiffs to raise common questions of law or fact.[90] But, plaintiffs can form a class action to litigate one issue.

The Plaintiffs contend that they are owed the amount that Geico has withheld under the GRR and PMR as damages because Geico violated Section 2118B and the terms of the policies. In response, Geico argues that the Plaintiffs have not sufficiently presented a damages model.

---

[88] Super. Ct. Civ. R. 23(b).
[89] *Id.*
[90] *Lynn v. Philip Morris United States*, 163 A.3d 91 (Del. Super. 2017).

So, Geico claims that it cannot assess whether individual claims for damages will predominate common questions of liability in trial. In its Reply, the Plaintiffs state that the Plaintiffs were not able to present a damages model because Geico has not produced discovery on damages.

In *Johnson v. GEICO Cas. Co.*,[91] the U.S. District Court for the District of Delaware ruled that individual claims for damages predominate common issues of liability. So, the court decertified the plaintiffs' class under 23(b)(3).

But, in *DeMaria v. Horizon Healthcare Servs., Inc.*,[92] the U.S. District Court for the District of New Jersey certified the plaintiffs' class action. In that case, the plaintiffs alleged that Horizon Health Services' use of a bundling policy, which automatically denied reimbursement for some services performed by chiropractors, was a violation of ERISA and a breach of the parties' contracts. The defendants argued that the court should not certify the plaintiffs' class because the plaintiffs' ERISA claims may have been denied for reasons other than Horizon Health Service's improper bundling policy. For example, the plaintiffs' claims may have been denied because plaintiffs' medical claims did not warrant coverage or time limitations in the plaintiffs' contract barred coverage.

The court held, "[w]hile it is true that Horizon's ultimate responsibility on each claim will require individual attention, the fairest and most efficient way for the court to address the class members' claims is to consider the legality of the bundling policy on a class-wide basis and, if illegal, to order reprocessing of the claims." In addition, the court held that the fact that the need to determine damages on a case-by-case basis does not predominate over the central question of whether the bundling policy was illegal or improper.

---

[91] 310 F.R.D. 246, 254 (D. Del. 2015), *aff'd,* 672 F. App'x 150 (3d Cir. 2016).
[92] 2015 WL 3460997, at *7 (D.N.J. June 1, 2015).

Here, the Court will certify the plaintiffs' class for the limited purpose of determining whether Geico's use of the GRR and PMR was a breach of contract, bad faith breach of contract, and to rule on a declaratory judgment. As in the *DeMaria* case, this question of fact is common to all the class members because all of the class members' claims were denied or reduced by Geico's use of the rules. The Court will not determine individual liability or damages. In this way, common issues predominate any individual claims for damages.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion.

**IT IS SO ORDERED.**

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeXpress